NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0331n.06

No. 12-5902

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 03, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| Violet M. Hogan, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Life Insurance Company of North America | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: DAUGHTREY, ROGERS, and MCKEAGUE, Circuit Judges.

ROGERS, Circuit Judge. Violet Hogan appeals the district court's grant of judgment on the administrative record in this disability suit. A former employee of SHPS, Inc., she seeks short-term disability ("STD") and long-term disability ("LTD") benefits under insurance polices provided by Life Insurance Company of North America ("LINA"). Because, contrary to Hogan's claims, LINA had discretionary authority to review her application for benefits, its decision is reviewed under the arbitrary-and-capricious standard. The district court properly concluded that LINA's decision met this standard.

On September 16, 2008, Hogan visited her primary care doctor, Dr. Thomas Schurfranz, complaining of anxiety, trouble thinking, and back pain. R.15, at 197, PageID #860. During this visit—just two days prior to her stopping work—she told Dr. Schurfranz that she couldn't "seem to function," that she didn't like her job, and that she had become "anxious, dwelling on things [at]

work." R.15, at 197, 164. She also stated that she was having panic attacks. *Id.* Dr. Schurfranz diagnosed her with depression with anxiety and prescribed medications. *Id.* Two days later, on September 18, Hogan stopped working as a Leave Processor for her employer, SHPS, Inc. Shortly thereafter, she applied for short term disability benefits, claiming depression, anxiety, and panic attacks. *See* R.15, at 79–81, PageID #736–38.

Although Hogan had a follow-up visit scheduled approximately 6 weeks after her first appointment with Dr. Schurfranz, she returned to his office on September 22 again complaining of "anxiety, much of which stems from work-related stress." R.15 at 197, PageID #860. At that visit, Dr. Schurfranz noted that he agreed with Hogan's decision to take a "short-term leave" until her medications took effect. *Id.*

Hogan returned to Dr. Schurfranz's office about one month later, reporting that she was "sometimes better, sometimes not." R.15, at 170, PageID #827. She also reported that she could not return to work because of stressors and that she was having several anxious episodes per week. *Id.* She told Dr. Schurfranz that she was paralyzed by emotions three to six hours per day, five days per week, with symptoms persisting even though she was no longer working. *Id.* At that time, Dr. Schurfranz referred Hogan to a psychiatrist. *Id.* LINA received no evidence that she followed up with that provider.

She received another psychiatric referral at the final medical appointment she attended through an employee assistance program ("EAP") on December 1, 2008. R.15, at 172–73, PageID #829–30. She attended only one such meeting. According to the visit notes, Hogan reported that

she could not concentrate or remember how to do things she had always been able to do. *Id.* The notes further stated that she was referred to Dr. Gupta, a psychiatrist, and suggested that her medical providers rule out Alzheimer's/dementia versus anxiety. *Id*. The EAP placed no limitations or restrictions on her work or daily activities. *Id.*

LINA served as the disability-claims processor for SHPS, Inc. Although the parties contest the extent of LINA's discretion in disability determinations, the STD Group Disability Insurance Certificate ("STD Certificate") stated:

> The Plan Administrator [SHPS] has appointed the Insurance Company [LINA] as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.

R.15, at 122. The STD Policy provided:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1.    unable to perform the material duties of his or her Regular Occupation; and
>
> 2.    unable to earn 60% or more of his or her Covered Earnings from working in his or her Regular Occupation.
>
> The Insurance Company will require proof of earnings and continued Disability.

R.15, at 88, PageID #745. The standard of proof was further elaborated elsewhere in the policy, which stated that the employee "must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability." R.15, at 92, PageID #749. The term "satisfactory proof" appeared several other times in the policy. *See, e.g.*, R.15, at 99, PageID #756.

- 3 -

In order to evaluate Hogan's claim, LINA reviewed Dr. Schurfranz's visit notes as well as a questionnaire completed by the doctor at LINA's request. These records amounted to three pages of visit notes and the brief questionnaire, called the Medical Request Form. Dr. Schurfranz was unable to provide additional documentation. Dr. Schurfranz noted that "significant stressors at work exacerbate [Hogan's] condition," R.15, at 188, but did not connect any specific work activity to her condition, nor did he provide any evidence of objective testing or further evaluation. And while he noted restrictions on her work activities, he did not initially place any restrictions on any other activities of Hogan's daily life.

LINA denied Hogan's claim on October 23, 2008. In its letter to Hogan, LINA cited a lack of clinical evidence of functional deficiencies and added "we cannot conclude from the records we received a physical or mental inability to function at work other than your current dislike for your position." R.15, at 11. LINA went further in describing the type of evidence that was problematically missing. It wrote:

> Disability is determined by medically supported functional limitations and restrictions which preclude ability in performing your occupation.
>
> We do not dispute you may have been somewhat limited or restricted due to your diagnosis, however an explanation of your functionality and how your functional capacity prevented you from performing the requirements of a Leave Processor was not clinically supported as we were not provided with physical exam findings, physical limitations, and severity of symptoms.

R.15, at 10–11. LINA suggested that its determination would be affected if Hogan could submit documentation such as "physician's office notes, hospital records, consultations, test result reports, therapy notes, physical and/or mental limitations, etc." *Id.*

Hogan appealed this determination. As part of Hogan's appeal, Dr. Schurfranz submitted a second completed questionnaire along with the final visit note from his practice. R.15, at 179, PageID #836. In the questionnaire, Dr. Schurfranz wrote that Hogan's primary diagnosis was "major depressive episode with anxiety" and noted that her condition was not work related. *Id.* "Stressors at work exacerbate her condition. Patient is unable to cope with these (and other) stressors, severely impairing her ability to exercise good judgement [sic]." *Id.* In terms of specific restrictions, Dr. Schurfranz wrote that Hogan was to "avoid work until symptoms are better controlled and patient can focus on tasks" and to "avoid going out in public alone until able to cope with stressful situations more effectively." *Id.* He denied that Hogan could be able to work with accommodations, stating that her "condition prevents her from being able to cope." *Id.* He wrote that "'accommodations' would not prevent her condition from worsening, as evidenced by her persistent exacerbations despite being off work several weeks." *Id.* He concluded that Hogan could only return to work "after therapy (counseling and medication) have improved her control of her symptoms." *Id.*

This second questionnaire was submitted to LINA along with a letter written by Hogan in which she further explained her condition and contested LINA's interpretation of her records. She informed LINA that it was "not completely informed as to the many ongoing problems or the full extent of [her] disabilities" and wrote that her condition made her "unable to focus [her] attention and concentrate making it nearly impossible to perform [her] duties at work or at home." R.15, at 180, PageID #837. She also noted that she suffers from "bi-lateral knee arthritis, degenerative disc disease and cervical spine disease, all of which are chronic ailments" as well as "coronary artery

disease, high blood pressure and high cholesterol." *Id.* Neither she nor Dr. Schurfranz suggested that these ailments restricted her work activities, although Hogan stated in her letter that she had "serious concerns about how the depression, anxiety and panic attacks will affect my heart problems." *Id.* Hogan submitted no information linking these conditions.

LINA assigned two nurse case managers to review Hogan's file on appeal. R.15, at 44, 176, PageID #701, 833. The first reviewer, Kem Lockhart, concluded that LINA's first decision should not be overturned, noting "no degree of severity documented . . . lack of actual office visit recvd . . . no note of change to meds." *Id.* at 176, PageID #833. The second reviewer agreed, noting that "there is a lack of clinical evidence such as mental status exam or observations to support [Hogan's] reported symptoms." *Id.* at 44, PageID #701.

LINA denied Hogan's appeal on December 8, 2008. In a letter to Hogan, LINA reiterated its need to have documented evidence supporting "functional limitations/restrictions which preclude ability in performing [Hogan's] occupation." R.15, at 165, PageID #822. It concluded that the records it reviewed did "not provide physical or mental exam findings regarding a measured decrease in [Hogan's] functionality and how [her] functional capacity prevented [her] from performing [her] occupation beginning September 19, 2008." *Id.* It added that, "there is no clinical testing or findings provided in the medical record to support" her reported limitations. *Id.*

On February 4, 2011, Hogan filed suit in federal district court alleging improper denial of STD benefits and amended her complaint later that month to include a claim for improper denial of LTD benefits. She argued, as she does on appeal, that SHPS did not properly delegate discretionary

review to LINA and therefore LINA's decision was not entitled to deference. On July 3, 2012, the court entered summary judgment for LINA. The court concluded that LINA had the authority to adjudicate benefit claims and that LINA's "satisfactory proof" requirements were sufficient to require review under the arbitrary-and-capricious standard. In its brief opinion, the court noted that "the [medical] record is slim and the Court finds it unconvincing." R.48 at 3, PageID #654. The court added "Defendant has many reasons to suspect this claim: (1) the general diagnostic conclusion, (2) the complete absence of clinical tests and results, and (3) based on only three office visits." *Id.* at 4, PageID #655. Citing a "complete absence of convincing medical evidence," the court concluded that "Plaintiff's medical evidence provides no sound or reasonable basis upon which to identify a medical condition limiting her work." *Id.* Therefore, "[t]he decision to deny benefits . . . was reasonable and was not arbitrary, capricious or an abuse of discretion." *Id.*

The scope of judicial review under ERISA depends on whether the claims administrator of a benefits plan has discretion to determine eligibility for benefits and/or to construe the plan's terms. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). This court reviews de novo the district court's determination of the proper standard of review. *Haus v. Bechtel Jacobs Co.*, 491 F.3d 557, 561 (6th Cir. 2007). "[A] denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If such a grant is made, the administrator's decision is reviewed under the arbitrary-and-capricious standard. *See id.* at 113–15.

The district court and LINA identified such delegation of discretionary authority in the STD Certificate; however, the Supreme Court recently restricted the types of documents that are considered part of the plan in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011). The Court concluded "that summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan." *Id.* at 1878. The same may be true of the STD Certificate, which purported to be a summary of the benefits contained in the policy. Although LINA cites several Sixth Circuit cases suggesting that plan summaries and certificates can be construed as plan documents, these cases predate *Amara*.

We need not, however, rely on the language in the STD Certificate, because the "satisfactory proof" language in the STD Policy was sufficient to grant discretionary authority to LINA. This circuit has treated group insurance policies as benefit plans and has concluded that the term "satisfactory proof" is sufficient to grant discretionary authority to review claims under the arbitrary-and-capricious standard of review. *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380–81 (1996); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983–84. In *Yeager* the court referred to a "Group Long Term Disability Insurance Policy" provided to employees by the insurance company as "the Plan" and concluded that "the Plan's requirement that a claimant submit 'satisfactory proof of Total Disability to us [the insurer]'" constituted a sufficiently express grant of discretion to warrant application of arbitrary-and-capricious review. *Yeager*, 88 F.3d at 380–81. In *Miller*, the court concluded that the phrase "on the basis of medical evidence satisfactory to the

Insurance Company" was a valid grant of discretion warranting arbitrary-and-capricious review of the insurer's decision to terminate benefits. *Miller*, 925 F.2d at 983–84.

Hogan's claim that the delegation was procedurally improper also fails, because 29 U.S.C. § 1105(c)(1) does not limit delegation, but rather identifies certain circumstances in which delegation may occur. These circumstances are relevant to the subsequent subsection, § 1105(c)(2), which limits liability for delegations of fiduciary responsibilities that occur under the procedures alluded to in § 1105(c)(1).

Finally, the standard of review is not changed by Kentucky Revised Statute § 304.14-120, which requires an insurer to file its policy with the Kentucky's Insurance Commissioner. The Commissioner's Advisory Opinion 2010-01 provides that "[i]t is the Department's position that discretionary clauses deceptively affect the risk purported to be assumed in any policy and as such, any forms containing discretionary clauses *may* be disapproved." R.41-4, at 1, PageID #525 (emphasis added). Nevertheless, this court is not bound by language in a non-binding opinion to alter the standard of review due to the mere possibility that the Department of Insurance could have disallowed the policy. Moreover, to the extent that Hogan challenges the validity of a non-filed policy, she should not be able to have her cake and eat it too—either the policy is valid or it is not. She cannot seek the benefits contained in the policy while rejecting procedural language adverse to her. *See id.*

Because LINA had discretionary authority to review Hogan's claim, the district court properly reviewed LINA's determination under an arbitrary-and-capricious standard. We review that

decision de novo. Based on the paucity of evidence before it, LINA was not unreasonable, arbitrary, or capricious to conclude that Hogan was not entitled to short-term disability benefits.

In evaluating Hogan's claim, LINA received only three brief visit notes from Hogan's treating physician—an internist lacking any sort of mental-health specialization. These notes indicated that the idea to take time off from work originated with Hogan and was not a restriction imposed by her physician (although Dr. Schurfranz agreed with her decision to stop working until her medications better controlled her self-reported symptoms). The record lacked any sort of clinical verification, and despite requests and opportunities to do so, Hogan failed to provide the type of information about her specific limitations that could be used by LINA to determine that she met the plan's definition of disability.

Insurance companies should provide "accurate claims processing by insisting that administrators provide a full and fair review of claim denials." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (internal quotation marks omitted). Under the arbitrary-and-capricious standard of review of benefits denials, if it is possible to "offer a reasoned explanation, based on the evidence," *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006), and the decision involves "a reasonable interpretation of the plan," this court will defer to the underlying decision. *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers*, 203 F.3d 926, 933 (6th Cir. 2000).

To meet the definition of "disabled" under the plan, Hogan needed to be unable to perform the material duties of her job and also needed to be unable to earn sixty percent or more of her earnings from her job. It was reasonable, based on the thin and conclusory evidence Hogan

submitted to LINA, and on Hogan's failure to respond to LINA's notice that it could not grant her claim without evidence identifying her functional deficits and linking them to her job duties, for LINA to deny that she was disabled within the plan's terms.

Moreover, nothing in LINA's letters to Hogan supports Hogan's assertion that LINA disregarded or failed to review fully the evidence before it. In LINA's October 23, 2008 letter, it noted its review of the September 16 and September 22 visit notes, and summarized the contents of Dr. Schurfranz's records. R.15, at 11, PageID #668. LINA's stated conclusion that the lack of clinical evidence explaining or identifying functional deficits prevented it from approving her claim was reasonable, not contrary to the evidence, and consistent with the plan's disability requirements. *Id.* Similarly, in the December 8 denial of appeal, LINA identified the definition of disability/disabled contained in the policy; provided a lengthy, item-by-item summary of Hogan's records; described the results of the file-review by nurse care managers; and again explained to Hogan why the records she submitted did not qualify her for disability benefits under the plan's terms. R.15 at 2–4, PageID #659–61. These explanations appear to reflect "reasonable interpretation[s] of the plan" and a "reasoned explanation, based on the evidence" justifying LINA's decision to deny benefits. *See Elliott*, 473 F.3d at 617; *Shelby Cnty.*, 203 F.3d at 933.

Despite Hogan's claim that LINA was required to give special deference to her treating physician's clinically unsupported claims, an insurance company's requirement that there be "objective medical evidence of disability is not irrational or unreasonable." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007).

Furthermore, Hogan's assertion that the district court's decision should be reversed for failure to adequately consider LINA's conflict of interest is unavailing. Although the district court did not discuss this factor, it does not affect the result in this case. Even if LINA's conflict were to be a strong factor against its decision, the paucity of evidence of Hogan's disability is a similarly strong counterbalance. The Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn* directs reviewing courts to weigh an insurer's conflict of interest in arbitrary-and-capricious review of benefits denials. An insurer operates under a conflict of interest when it is responsible both for evaluating claims and paying benefits. 554 U.S. at 113–14.

LINA was both the evaluator and payer of SHPS employees' benefits claims and therefore a conflict of interest was present and should have been weighed. However, the weight to be given to the factor is case-specific. Such a conflict is "more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision, including but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 117. It has less weight "where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.* Hogan sought, but did not receive, discovery regarding the performance of LINA's employees and the procedures under which they operated. This may be cause to weigh the conflict "slightly in favor of finding that [LINA's] determination was arbitrary and capricious." *See Thies v. Life Ins. Co. of N. Am.*, 804 F. Supp. 2d 560, 573 (W.D. Ky. 2011). However, even weighing the conflict against LINA, it does not outweigh LINA's reasonable concerns detailed above.

While Hogan also seeks LTD benefits, she did not first seek these benefits from LINA and therefore she failed to exhaust administrative remedies with respect to this claim. She advances a theory that LTD benefits should be awarded automatically if STD benefits are granted, because LINA's policy includes a provision that automatically transitions STD into LTD after the expiration of the STD period. However, because we uphold LINA's denial of STD benefits, we have no reason to reach Hogan's LTD claims on this theory.

For these reasons, we affirm the decision of the district court.