RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

KIMBERLY A. FRAZIER,

          *Plaintiff-Appellant,*

      *v.*

LIFE INSURANCE COMPANY OF NORTH AMERICA,

          *Defendant-Appellee.*

No. 12-6216

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:11-cv-00062—John G. Heyburn II, District Judge.

Argued: June 12, 2013

Decided and Filed: August 5, 2013

Before: COLE and McKEAGUE, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael D. Grabhorn, GRABHORN LAW OFFICE, PLLC, Louisville, Kentucky, for Appellant. Cameron S. Hill, CALWELL & BERKOWITZ, P.C., Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Michael D. Grabhorn, GRABHORN LAW OFFICE, PLLC, Louisville, Kentucky, for Appellant. Cameron S. Hill, Marcie K. Bradley, CALWELL & BERKOWITZ, P.C., Chattanooga, Tennessee, for Appellee.

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

ZOUHARY, District Judge.   Kimberly Frazier filed this lawsuit against Life Insurance Company of North America ("LINA") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking to obtain long term disability ("LTD") and other benefits allegedly owed her under an employer-sponsored insurance policy ("Policy") issued by LINA.   The district court granted judgment for LINA, reasoning that LINA had the discretionary authority to deny Frazier's claim, and that the denial of benefits was neither arbitrary nor capricious.   We affirm.

**BACKGROUND**

**Frazier's Medical History**

Frazier worked as a "sorter" for Publishers Printing Company, LLC ("Publishers").   In this position, she was covered by Publishers' employee benefit plan ("Plan"), which provided disability insurance as set forth in the Policy.   In July 2009, she left her job at the age of 42 due to pain in her back that radiated down both legs, a condition she thought was caused by arthritis and a "bulging disc," though she could not identify or remember any particular trauma, fall, or injury that initiated the pain.

Frazier underwent an MRI of her lumbar spine in early July 2009, which revealed mild disc dislocation at the L4–5 level.   Later that month, she visited her family physician, Dr. Brian Eklund, complaining of pain in her right foot with accompanying numbness and tingling.   He diagnosed her with lower back pain and radiculopathy. Frazier visited Dr. Eklund several times between July and December 2009, and his final opinion, which he expressed to LINA in 2010, was that Frazier was unable to return to work at regular capacity.

After visiting Dr. Eklund in July 2009, Frazier began a course of physical therapy aimed at decreasing pain.   The administrative record reflects Frazier participating in only

a limited stretch of physical therapy, ending in August 2009, but her discharge summary indicates she had met all treatment goals.

Following completion of physical therapy, Frazier began seeing another physician, Dr. Kyaw Htin, for an evaluation of her chronic pain. During her first visit, Dr. Htin prescribed a treatment plan consisting of lumbar epidural injections. Frazier received several such injections from August 2009 to February 2010, and Dr. Htin's notes indicate that although Frazier's pain level varied each visit, the injections were effective in achieving a decrease in pain for some period of time. The last discharge instruction from Dr. Htin permitted her to return to work the following day.

**Policy Provisions**

Publishers is the administrator of the Plan under which Frazier claims benefits. *See* 29 U.S.C. § 1002(16). It "has appointed [LINA] as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims."

Under the Policy, Frazier is considered disabled if she is "unable to perform the material duties of [] her Regular Occupation," and "unable to earn 80% or more of [] her indexed earnings from working in [] her regular occupation." The term "Regular Occupation" is defined as:

> The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.

To be eligible for LTD benefits under the Policy, Frazier must provide "satisfactory proof of disability," and show that she has been "continuously disabled" for a period of 180 days, known as the "elimination period," before benefits will be paid.

The Policy also provides that LINA may assist Frazier in applying for Social Security Disability Income ("SSDI") benefits, and if she chose not to cooperate with LINA, LINA would reduce its benefit payments by the amount it estimates she would have received in SSDI benefits. This provision is contained in a section of the Policy

entitled "Other Income Benefits," which notes that LINA "may reduce" LTD benefit payments by the amount received from other listed income sources, including SSDI.

**Frazier's Claim for LTD Benefits**

In January 2010, Frazier submitted a claim to LINA for LTD benefits due to lower back pain and radiation of pain down both legs. She indicated her job title with Publishers was "sorter," and that her primary duties included sorting and bagging mail, boxing, lifting, bending, and twisting. Publishers identified her job title as "mail sorter," and noted her duties included separating magazines by zip codes (in bunches of about fifteen pounds) at "production speeds," and listed the job requirements as "continuous standing and twisting motion; lifting approximately 15 lb. lifts; arm and wrist movement." This definition accords with the U.S. Department of Labor's job description of "mail sorter," which indicates it is a "light" strength occupation that includes "lifting, carrying, pushing, pulling 20 lbs. occasionally, frequently up to 10 lbs. or negligible amount constantly."

LINA denied the claim in February 2010 after reviewing available medical evidence and the job descriptions from Publishers and the U.S. Department of Labor. Among the medical evidence reviewed by LINA and a nurse case manager were: the July 2009 MRI of Frazier's spine, office visit notes from Drs. Eklund and Htin, physical therapy evaluations, and Dr. Eklund's attending physician statement. LINA explained that the primary shortcoming in Frazier's application was a lack of sufficient medical evidence of continuous disability:

> The [doctor] notes consistently indicate no sensory deficits and normal strength bilaterally. No lower extremity atrophy, current range of motion scales, consistently positive straight leg raises, documented nerve root impingement or cord compression, documented instability on flexion or extension were noted. Overall, the medical information available for review is insufficient to support a significant physical deficit throughout the Elimination Period.

In its letter to Frazier denying her claim, LINA also explained her appeal rights:

> You have the right to submit written comments as well as any new documentation you wish us to consider. . . . Additional information includes, but is not limited to: physician's office notes, hospital records, consultations, test result reports, therapy notes, physical and/or mental limitations, etc. You may also wish to have your physician(s) provide some or all of the following: Clinical examination findings, such as sensory, motor and gait, and objective test results upon which the above limitations and restrictions are based.

Frazier appealed LINA's initial decision in March 2010, and submitted as additional documentation a Functional Capacity Evaluation ("FCE") performed that same month. The FCE indicates Frazier "is currently functionally capable of meeting the lower demands for the Medium Physical Demand level on a 8 hour per day basis according to the U.S. Department of Labor Standards."

LINA affirmed its decision in April 2010, noting in another letter to Frazier that a review of all available information indicates Frazier's "current functional ability would allow [her] to perform the material duties of [her] regular occupation." LINA again informed Frazier of her ability to appeal the denial, but this time instructed her that she would be required to submit new documentation.

Frazier filed this lawsuit under 29 U.S.C. § 1132(a)(1)(B) in February 2011. Both parties moved for judgment on the administrative record. Frazier argued that LINA wrongly denied her claim, and that the district court should review the denial de novo because LINA had not been given discretionary authority under the Plan to review disability claims. LINA countered that the district court should apply the arbitrary and capricious standard, and that, in any event, its denial of Frazier's claim was reasoned and correct.

In September 2012, the district court determined that LINA had discretionary authority to review LTD claims, and thus applied the arbitrary and capricious standard. It then found the denial to be neither arbitrary nor capricious given LINA's review of the full record, which included the various medical records and job descriptions, and granted LINA's motion. Frazier timely filed a notice of appeal, which is properly before this Court under 28 U.S.C. § 1291.

**DISCUSSION**

This Court reviews de novo questions of law, including the "district court's determination regarding the proper standard to apply in its review of a plan administrator's decision." *Haus v. Bechtel Jacobs Co.*, 491 F.3d 557, 561–62 (6th Cir. 2007) (internal quotation marks omitted). A district court's factual findings "inherent in deciding an ERISA claim are reviewed for clear error." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 714 (6th Cir. 2000). "[F]actual findings are clearly erroneous if, based on the entire record, we are left with the definite and firm conviction that a mistake has been committed." *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 364–65 (6th Cir. 2009).

### 1.      The Arbitrary and Capricious Standard of Review

Under ERISA, a denial of benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Majestic Star Casino*, 581 F.3d at 364–65. If the administrator or fiduciary can show it has such discretionary authority, a benefits denial is reviewed under the arbitrary and capricious standard. *Haus*, 491 F.3d at 561–62 (internal quotation marks omitted). Although "magic words" are not required, this Court "has consistently required that a plan contain a *clear* grant of discretion" to the administrator or fiduciary before applying the deferential arbitrary and capricious standard. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (internal quotation marks omitted, emphasis in original). A plan is not required to, but "may expressly provide for procedures for allocating fiduciary responsibilities." 29 U.S.C. § 1105(c)(1).

At issue here is whether the Plan vests discretionary authority in LINA. Because Publishers is the Administrator, *see* 29 U.S.C. § 1002(16)(A)(ii), LINA would need to show it is a fiduciary to whom Publishers granted discretion for the more lenient standard to apply. Frazier argues LINA is not a fiduciary because no plan document

(other than the Policy, which she argues is merely a plan asset) identifies it as such, and that even if it is, the Plan fails to grant LINA discretion to decide benefit claims. Neither argument is convincing.

Frazier incorrectly argues that ERISA precludes an insurance policy from being both a plan asset and a plan document. In support, she references 29 U.S.C. § 1101(b)(2), which provides that guaranteed benefit policies are to be considered among plan assets. But nothing in Section 1101(b)(2) prohibits an insurance policy from being a plan document, and there appears to be no reason why an insurance policy cannot be both a plan document and asset. *See Musto v. Am. Gen. Corp.*, 861 F.2d 897, 901 (6th Cir. 1988) ("[T]he insurance policy, in this case, is the 'written instrument' required by [ERISA]."); *see also Hogan v. Life Ins. Co. of N. Am.*, No. 12-5902, 2013 WL 1316542, at * 4–5 (6th Cir. 2013) (unpublished) (citing cases and noting "[t]his circuit has treated group insurance policies as benefit plans"). And the Policy here identifies itself as a "Plan document within the meaning of ERISA," and identifies LINA as a "named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims." The Policy makes clear LINA is a fiduciary under the Plan.

Frazier also seems to argue that the Policy, if more than simply a plan asset, at most would be a summary document, and the Supreme Court has held that statements in summary documents "do not constitute the terms of [an ERISA] plan." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (emphasis omitted). But *Amara*'s holding applies only to documents purporting to be plan summaries. Nothing in that decision supports the argument that an insurance policy, such as the one at issue here, cannot be a plan document.

Finding the Policy to be a plan document, however, does not end the inquiry. On this point, Frazier argues the Policy fails to expressly grant LINA discretionary authority to review claims. She fails, however, to distinguish this Court's precedent finding language similar to that contained in the Policy sufficiently clear to invoke the arbitrary and capricious standard. The Policy requires claimants to "provide the Insurance

Company, at his or her own expense, *satisfactory proof* of Disability before benefits will be paid." This Court has found "satisfactory proof," and similar phrases, sufficiently clear to grant discretion to administrators and fiduciaries. *See, e.g.*, *Perez*, 150 F.3d at 556 (granting discretion where "the proof or evidence of disability . . . [is] satisfactory to the insurer or plan administrator"); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991) (granting discretion "on the basis of medical evidence satisfactory to the Insurance Company"). Although the Policy could have more clearly expressed this grant of discretion, the "'mere fact that language could have been clearer does not necessarily mean that it is not clear enough.'" *Perez*, 150 F.3d at 558 (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)).

Finally, Frazier argues a Kentucky statute requiring LINA to file its Policy with the Kentucky Department of Insurance, and an advisory opinion issued by Kentucky's Insurance Commissioner, require de novo review. This argument is misplaced, and this Court squarely addressed it in a recent unpublished opinion. *See Hogan*, 2013 WL 1316542, at *5. The Commissioner's position, set forth in a non-binding opinion, is that "discretionary clauses deceptively affect the risk purported to be assumed in any policy and as such, any forms containing discretionary clauses may be disapproved." Suffice to say that we are "not bound by language in a non-binding opinion" by Kentucky's Commissioner. *Id.*

The district court correctly found that the Plan confers discretionary authority on LINA to make determinations as to benefit claims, and correctly applied the arbitrary and capricious standard of review.

### 2.        LINA's Denial of Benefits was Rational

Under ERISA, insurance companies should provide "accurate claims processing by insisting that administrators provide a full and fair review of claim denials." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). "When plans give discretion, we apply the highly deferential arbitrary and capricious standard," which means we will uphold a claim decision "so long as it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Haus*, 491 F.3d at 561–62 (internal quotation marks

omitted). This standard requires us to defer to the underlying decision so long as it is rational in light of the plan's provisions. *Miller*, 925 F.2d at 984.

Frazier argues that LINA's denial of her LTD benefits claim was arbitrary, capricious, and unreasonable, and that the district court's judgment should be reversed for eight reasons: (1) the medical records support Frazier's disability claim; (2) LINA made representations to the Social Security Administration regarding Frazier's claim that are at odds with its position in this litigation; (3) LINA failed to investigate Frazier's actual job duties; (4) LINA failed to have Frazier physically examined; (5) LINA ignored the Policy definition of "ability to work"; (6) LINA made improper credibility determinations concerning Frazier's pain; (7) LINA failed to provide a reasoned explanation for its denial; and (8) LINA failed to eliminate an inherent financial bias. Frazier failed to raise some of these arguments in the district court and, in any event, none of them defeats the finding that LINA's denial was reasonable in light of the administrative record.

### The Claim Denial is Adequately Supported by the Administrative Record

To be considered disabled under the Policy, a claimant must be "unable to perform the material duties of his or her Regular Occupation," which in turn refers to "the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location." Further, a claimant must show he or she has been disabled continuously for 180 days in order to receive benefits.

Frazier worked as a sorter for Publishers, and its own description of the job duties includes lifting fifteen pounds and continuously standing and twisting. The U.S. Department of Labor's job description for mail sorter, also in the administrative record, classifies the job as a light strength occupation that requires lifting up to ten pounds frequently, up to twenty pounds occasionally, and standing. Therefore, under the Policy, a sorter would be disabled if he or she could not materially perform these listed tasks.

As the district court noted in its opinion, "there is not much question" that the medical evidence in the administrative record supports LINA's initial denial in February 2010. First, the MRI from July 2009 indicates only mild degenerative disc disease. Second, Frazier completed a course of physical therapy, and the discharge note indicates she met all her pain-decreasing and range-of-motion goals. Third, Dr. Htin, with whom Frazier met on several occasions, noted consistently that the treatment program he prescribed decreased her pain for some period of time following each visit, that she had normal motor function and no sensory deficits, and discharged her on two occasions with express permission to return to work after twenty-four hours. Finally, although Dr. Eklund's notes indicate Frazier should be limited to sedentary work and that she could not return to work at full capacity, the notes lack detail and reference no measured tests to support the restrictions. This record constitutes sufficient evidence to support LINA's initial denial.

In her appeal of LINA's initial decision, Frazier submitted as new evidence only the FCE, which concluded she was capable of performing tasks in a "medium" physical demand occupation. It also stated that Frazier occasionally could lift in a range from twenty-five to thirty-five pounds, depending on the motion, and that she should have no restriction from standing. Frazier argues the FCE actually states she is unable to lift any weight on a constant basis, but that misreads the report. The FCE apparently did not test what weight she could lift constantly, as indicated by a finding of "N/A" rather than "0 lbs."

Combining the FCE with the then-existing record, LINA's subsequent denial of Frazier's appeal is adequately supported, and certainly not arbitrary and capricious. Specifically, she failed to show she was continuously disabled for 180 days, as the terms are defined in the Policy. Frazier's last day of work was in July 2009, and the record evidence supports that, at least at several points during the next 180 days, she was cleared to return to work without an activity limitation.

In the district court, however, Frazier submitted, for the first time, a declaration regarding her purported actual job duties, in which she states she worked as a sorter on

a production belt, was frequently lifting over twenty-five pounds, and occasionally lifting seventy pounds. This declaration was not in the administrative record; therefore, LINA did not have the opportunity to consider it.[1]  But even if the declaration were in the administrative record, as noted above, when determining a benefits claim, LINA looks to "the duties of the occupation as it is normally performed in the general labor market of the national economy."  That Frazier may have performed duties exceeding the descriptions provided by Publishers as well as the Department of Labor would not necessarily have been relevant to LINA's determination on her benefits claim unless, perhaps, Frazier's actual duties were so far outside the scope of Publishers' or the Department of Labor's descriptions that relying on these descriptions could be arbitrary and capricious.  *See, e.g.*, *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 43 (6th Cir. 2007).  But the critical fact missing from this hypothetical is that Frazier should have presented any conflicting job description to LINA while it considered her claim and appeal.  She never did.  Therefore, the district court correctly affirmed LINA's denial of benefits.

### LINA Acted Reasonably in Denying Frazier's Claim

In addition to arguing the merits of her benefits claim, Frazier attacks several of LINA's procedures, faulting what evidence it did and did not review, and raising potential conflicts of interest.  None of these arguments compel a finding that LINA improperly denied her benefits claim.

First, the record is clear, despite Frazier's arguments to the contrary, that LINA reasonably consulted with Publishers to ascertain her job duties.  Publishers provided LINA with a job description, and confirmed that Frazier typically worked forty-hour weeks.  The Publishers description of Frazier's job accords with the Department of

---

[1]LINA moved to strike references in Frazier's brief to: (1) her declaration and (2) the Social Security Disability Decision granting her benefits.  LINA argues, among other things, that these two documents were not part of the record presented to the plan administrator and thus cannot be considered by this Court.  Because the documents were made part of the district court record, we deny the motion to strike.  It is well established that judicial review of an ERISA claim for benefits wrongfully denied is generally limited to the record presented to the plan administrator.  *See McCartha v. Nat'l City Corp.*, 419 F.3d 437, 441 (6th Cir. 2005).  We need not consider either the Frazier declaration or the Social Security decision in resolving this appeal.

Labor's description of mail sorter, which is classified as a "light" strength occupation, and under the Policy, LINA needs only determine the duties of the occupation as it is normally performed in the national economy. LINA rationally relied on the employer's description of Frazier's job. And, in any event, Frazier did not contest this description or classification during the appeals process. Such reliance is not arbitrary and capricious.

LINA also sufficiently consulted with Frazier's doctors to acquire their notes and other information related to her condition and treatment. LINA requested, among other things, office visit notes, physical assessment forms, treatment plans, and restrictions and limitations that may prevent Frazier from returning to work. LINA then reviewed this information, and reasonably gave more weight to the objective findings and express clearance to return to work provided by Dr. Htin rather than Dr. Eklund's assessment, which lacked diagnostic data. In addition, LINA was under no obligation to have Frazier physically examined -- although the Policy permits LINA to have a physical evaluation performed on a claimant, no language requires it.

Frazier makes several other arguments, each without merit. First, she argues LINA failed to give a reasoned explanation for its denial of benefits. But LINA set forth its reasons for denying both the claim and the appeal in letters to Frazier, including listing the materials it reviewed. She then argues that the Policy requires LINA to make a disability determination based on medical evidence she submits, consultation with her doctors, and an evaluation by independent experts of her ability to work. But this part of the Policy deals with determining the amount of LTD benefits a claimant can receive, not whether the claimant is eligible for benefits. She also argues LINA improperly disregarded her statements to doctors regarding pain levels, but no evidence suggests this was the case. On the contrary, LINA's decision took into account what she told her doctors, as well as other evidence in the administrative record. It was not arbitrary and capricious for LINA to review the full record and make a considered determination rather than simply relying on Frazier's stated pain levels. In addition, she claims that LINA failed to eliminate its inherent financial bias, but this point is baseless because she

presents no evidence that a conflict of interest actually affected LINA's decision to deny benefits. *See Iley v. Metro. Life Ins. Co.*, 261 F. App'x 860, 864 (6th Cir. 2008). Finally, Frazier argues LINA made representations to the Social Security Administration regarding her disability while assisting with her application for SSDI benefits that are inconsistent with its denial of benefits. These representations were made before LINA finished assessing Frazier's benefits claim and thus before receiving any offsets from an SSDI award. The cases she cites regarding judicial estoppel are inapposite because they fault insurance companies for taking inconsistent positions when revoking benefits *after* receiving SSDI offsets to benefits already paid. *See, e.g.*, *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 294 (6th Cir. 2005).

### 3. Frazier's Claim for SSDI Application Assistance

Frazier's final argument on appeal is that LINA was obligated to continue assisting with her application for SSDI benefits, and she seeks to recover all fees and costs she incurred by retaining counsel in her eventually successful application for SSDI. She argues that the Plan's language requires LINA to assist her at the outset and, though she does not clearly make the argument, that LINA should have been estopped from terminating its assistance (which was being provided by a third party, Allsup, Inc. ("Allsup"), at LINA's expense) once it determined she was not entitled to LTD benefits. LINA counters that the Policy language is permissive, not mandatory, and that Frazier's argument is a "distraction." However, even though Frazier raised this claim in her complaint, and in her cross motion for judgment on the administrative record, the district court never specifically addressed it. Instead, it appears the district court ruled implicitly against Frazier on this claim by denying her cross motion, granting LINA's motion for judgment, dismissing Frazier's claims with prejudice, and closing its opinion and order by noting "[t]his is a final and appealable order."

Indeed, the merits of this claim are weak -- the Policy's language is permissive rather than mandatory ("The Insurance Company *may* help the Employee in applying for [SSDI] Benefits"), and Frazier has not made a well-articulated estoppel argument. Although the district court ought to have specifically addressed the claim, its failure to

do so is harmless, and does not require remand, because this record is insufficient to support any such claim. The paucity of evidence in the record -- letters from LINA to Frazier instructing her to sign a reimbursement agreement and cooperate with a member of LINA's Social Security assistance program team, and the signed reimbursement agreement -- which was confirmed by counsel at oral argument, does not support a claim that LINA could be liable for the termination of assistance. What is lacking, for example, is any development of the record regarding any potential involvement by LINA in Allsup's decision to terminate assistance, or any evidence that Frazier appealed, or otherwise complained to LINA about, the termination of assistance. In short, although Frazier may have had a plausible claim arising from the termination of assistance, the record here does not support such a claim.

## CONCLUSION

Because the district court properly applied the arbitrary and capricious standard, and because LINA's claim denial was reasonable, we **AFFIRM**.