NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0411n.06
CASE NO. 15-6006

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 21, 2016
DEBORAH S. HUNT, Clerk

MONICA L. CROX,        )
                       )
    *Plaintiff-Appellant,*        )
                       )        **ON APPEAL FROM THE**
    v.                 )        **UNITED STATES DISTRICT**
                       )        **COURT FOR THE EASTERN**
UNUM GROUP, CORP.,     )        **DISTRICT OF TENNESSEE**
                       )
    *Defendant-Appellee.*        )
                       )

Before:  BOGGS, SILER, and BATCHELDER, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**   In this ERISA action challenging the denial of long-term disability benefits, the district court accepted and adopted the magistrate judge's report and recommendation (R&R), and consequently dismissed the plaintiff's complaint with prejudice.  The plaintiff appeals but, finding no merit to her appeal, we affirm.

**I.**

Monica Crox was a nurse.  When her divorce led to emotional distress with physical and medical manifestations, she quit working and sought disability benefits from her ERISA Plan.  Defendant Unum Group is both Plan payer and administrator and paid Crox benefits for two years.  Under the terms of the Plan, in order to continue to receive benefits beyond that point, Crox had to show that she was incapable of engaging in even a purely sedentary occupation.

Unum determined, based on several specific findings, that Crox could perform a sedentary occupation.  Crox's file contained multiple MRIs that revealed no degenerative back problem that would explain or support her claims of a disabling back condition.  A "neurological and movement disorder" specialist (Dr. Stover), acting on referral by Crox's treating physician

because Crox claimed an autonomic dysfunction, had diagnosed Crox with conversion disorder—a mental-health condition in which a person shows psychological stress in physical ways—and had prescribed psychotherapy, but Crox refused psychiatric treatment. Two of Unum's medical consultants reviewed Crox's full medical record and agreed with the diagnosis of conversion disorder, concluding that even if Crox was disabled due to mental illness she was not precluded from sedentary work as required to receive benefits under the Plan.

Unum also contacted the treating physicians from Crox's medical records as well as some others whom Crox had named. Five of those physicians told Unum that Crox was capable of working full time in a sedentary job while five others declined to comment because they were not actually treating Crox. One physician (Dr. Trudell) delegated the task to his nurse practitioner (Jennifer Sparks), who said that Crox's "hand tremor makes it difficult to work with her hands; worsens with activity," but concerning restrictions or limitations, said, "I have only seen this patient once and I am unsure." When Unum followed up with several telephone calls seeking elaboration or clarification, neither Dr. Trudell nor Nurse Sparks responded.

Unum had a vocational-rehabilitation specialist review Crox's file; the specialist identified several sedentary jobs suitable to Crox and available in the geographic area. Finally, Unum obtained video surveillance of Crox in her daily activities; driving, walking, smoking, using her cell phone, and doing other routine activities, all without assistance and showing no obvious symptoms of dizziness, tremors, or pain. Based on these findings, Unum denied Crox's claim and discontinued her benefits. Unum later denied her administrative appeal. Crox sued in federal court, pursuant to ERISA, and the court delegated the case to a magistrate judge.

Crox argued two issues to the magistrate judge: (1) that a *de novo* standard of review should apply and (2) that Unum erred by finding her capable of sedentary work. Crox argued for *de novo* review by claiming that the Plan is self-contradictory in that, while it gives discretion to

2

the administrator, it denies discretion by requiring the administrator to be "reasonable." The magistrate judge answered that "reasonableness [is] the touchstone of the arbitrary and capricious standard," so the Plan is not contradictory and the proper standard of review is arbitrary-and-capricious, not *de novo*. As for Crox's second argument, the magistrate judge compiled and considered all of Unum's record evidence in a lengthy R&R, and concluded:

> After a review of the evidence and, given that [Crox] has not produced an opinion from a single physician to dispute the numerous opinions that [Crox] is not precluded from sedentary work by her physical impairments, the undersigned [magistrate judge] concludes that Unum's decision to deny benefits was not arbitrary and capricious; rather, it was reasonable.

R. 31 at 17. In reaching this conclusion, the magistrate judge had also addressed Crox's argument that the Social Security Administration (SSA) had declared her disabled, explaining that neither Unum nor the court was bound by the SSA's decision and, in any event, Unum had specifically addressed and rejected the SSA decision in its denial when it explained that the SSA had seen neither Dr. Stover's diagnosis of conversion disorder nor the surveillance video. The magistrate judge recommended that the court grant summary judgment to Unum.

Crox filed objections to the magistrate judge's report, arguing that: (1) a *de novo* standard of review applied and (2) the magistrate judge failed to consider the conflict of interest resulting from Unum's both administering the Plan and paying benefits out of it. With respect to the former argument, the court adopted the magistrate judge's "well-reasoned conclusions" that the reasonableness requirement did not make the Plan contradictory, so the court must apply the arbitrary-and-capricious standard of review. With respect to the latter, the court recognized that Unum had a facial conflict and that the magistrate judge had not expressly addressed it, but that Unum had taken sufficient steps to overcome any bias and ensure accuracy, concluding:

> Unum contacted all of [Crox]'s physicians, not just those employed by Unum, to inquire about [Crox]'s ability to work. As stated above, none of these physicians opined that [Crox] was incapable of working full-time in a sedentary capacity.

Even considering Unum's conflict of interest, the [c]ourt finds that, given the dearth of evidence in [Crox]'s favor, Unum's decision to deny [Crox] benefits was reasonable, and thus was neither arbitrary nor capricious.

R. 34 at 3-4. The district court dismissed Crox's complaint with prejudice. Crox appealed.

## II.

We apply *de novo* review to questions of law, such as "the district court's determination [of] the proper standard [of review] to apply in its review of a plan administrator's decision." *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 565-66 (6th Cir. 2013) (quotation marks and citation omitted). In reviewing "the district court's judgment on [a] [p]laintiff's ERISA claim," we "apply[] the same standard of review to the plan administrator's action as required [of] the district court." *Javery v. Lucent Techs., Inc. Long Term Disability Plan*, 741 F.3d 686, 700 (6th Cir. 2014). That is, when the "plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan. . . , we review the denial of benefits only to determine if it was arbitrary and capricious." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1063-64 (6th Cir. 2014) (quotation marks and citation omitted). And, within that review, we review for clear error the "district court's factual findings inherent in deciding an ERISA claim." *Frazier*, 725 F.3d at 566 (quotation marks and citation omitted).

## A.

Crox urges us to review the denial of benefits *de novo*, despite the Plan provision's plain language: "The plan acting through the plan administrator, delegates to UNUM and its affiliate UNUM Group discretionary authority to make benefit determinations under the plan." She argues that this provision does not actually grant discretionary authority because it also requires that "[a]ll benefit determinations must be reasonable and based upon the terms of the plan," which, she contends, negates the grant of discretion. The district court disagreed, stating that "the Sixth Circuit has often referred to reasonableness as the touchstone of the arbitrary and

4

capricious standard." R. 31 at 15, PgID # 5485, *citing*, *among others*, *Price v. Bd. of Trs. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (explaining arbitrary-and-capricious review as requiring that "we must uphold the administrator's decision if the administrator's interpretation of the Plan's provisions is reasonable"); *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 300 (6th Cir. 2006) (same); *Wooden v. Alcoa, Inc.*, 511 F. App'x 477, 482 (6th Cir. 2013) (holding that, "[s]o long as there is evidence in the record to support a reasonable explanation to deny benefits, the decision is not arbitrary and capricious"). Thus, the district court concluded, the "use of the word 'reasonable' does not contradict the arbitrary and capricious standard nor is it so vague as to require application of the *de novo* standard."

The Plan's language grants the Plan administrator discretion (though not discretion to act unreasonably) and, therefore, the district court properly reviewed that decision for whether it was arbitrary and capricious. *See McClain*, 740 F.3d at 1064-65. Crox's claim is meritless.

Crox also presses a tangential argument, claiming that the Plan's language—being contradictory—was misleading and "had she been aware of the gravity of the standard of review used by Unum during the administrative proceedings, [she] could have developed a more complete record of her disability early in the claims process." Given that the Plan language was not contradictory, and correspondingly not misleading, this contention fails for lack of a valid premise. Any failure to develop a more complete record was Crox's own.

**B.**

Crox contends that the district court failed to disprove the presumptive conflict of interest in Unum's being both Plan payer and administrator, and cites four reasons: it considered only the opinions of Unum's doctors; it did not give enough weight to Nurse Sparks's statement about Crox's hand tremors' making it difficult for Crox to work with her hands; it did not give enough

weight to the SSA determination of disability; and it gave too much weight to Dr. Stover's diagnosis of conversion disorder. We disagree.

Unum requested medical opinions from at least 11 doctors, each of whom was either Crox's treating physician or a doctor she had suggested. Five said she could work and five others declined to opine because they were not actually treating her. The district court relied on these responses.

One doctor (Dr. Trudell) delegated the response to his nurse practitioner, Jennifer Sparks, who said that Crox's "hand tremor makes it difficult to work with her hands [and] worsens with activity," but also said "I have only seen this patient once and I am unsure" whether Crox had any restrictions or limitations. Neither Dr. Trudell nor Nurse Sparks would respond to clarify or support this answer. Neither Unum nor the court was obliged to defer to (or even grant persuasive weight to) this isolated, vague, and equivocal statement by a single nurse.

The court did consider the SSA determination and, after explaining that it was not determinative, further explained that it was based on incomplete information and that the missing information (Dr. Stover's diagnosis and the video surveillance) was persuasive. Finally, Dr. Stover's diagnosis—which was not, as Crox contends, the only or dispositive evidence—was fully supported and explained, and Unum's doctors agreed with it after their own review.

The district court's determination was reasonable and correct.

## C.

Finally, Crox argues that the district court should have (1) faulted Unum for failing to order an independent medical exam (IME), (2) accepted the SSA disability award as controlling, and (3) reconsidered Crox's entire medical record for itself in the light that Crox would have construed it. We find no support for or merit in these arguments.

Neither the Plan nor ERISA mandates an IME and Crox has pointed to nothing in the record that would indicate that an IME was required here. In fact, from our review of the record, this appears to be the first such reference to an IME, suggesting that Crox's claim is actually that the district court committed plain error by failing to sanction Unum *sua sponte* for failing to order an unrequested, unrequired, and apparently unnecessary IME. This claim lacks any legal basis.

Next, as we have already noted, the district court did consider the SSA determination and explained why it was not persuasive. In any event, the SSA determination is not controlling. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005) ("[W]e hold that an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan.").

Finally, Crox's claim that the court should have reconsidered her medical record for itself is just a restatement of the "*de novo* review" argument raised at the outset, which we have already rejected. Moreover, the magistrate judge did reconsider the medical record and determined that Crox's physical impairments did not preclude her doing sedentary work and, therefore, Unum's decision to deny her benefits was reasonable.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.