NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0065n.06
Filed: January 18, 2008

No. 06-2589/07-1201

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KELLY ILEY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| METROPOLITAN LIFE INSURANCE | ) | MICHIGAN |
| COMPANY and THE KROGER COMPANY | ) | |
| HEALTH AND WELFARE PLAN, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: SILER, GIBBONS, and McKEAGUE, Circuit Judges.

**SILER, Circuit Judge.** Plaintiff Kelly Iley ("Iley") received long-term disability ("LTD") benefits from Defendant Metropolitan Life Insurance Company ("Met Life") under the provisions of The Kroger Company Health and Welfare Plan ("Plan"). Met Life began payment of LTD benefits after Iley suffered a back injury; however, Iley fell within an exception in the Plan, which limited Iley's total disability payments to twenty-four months unless Iley had objective evidence of radiculopathy. Upon failure to present such evidence, Met Life terminated Iley's benefit payments. Iley sued Met Life in the district court under the Employee Retirement Income Security Act ("ERISA"). The district court found that Met Life acted arbitrarily and capriciously in terminating Iley's LTD benefits, and awarded Iley attorney fees and prejudgment interest.

Met Life now appeals, arguing that it did not act arbitrarily and capriciously when it terminated Iley's benefits. It also argues that the district court abused its discretion in awarding Iley attorney fees and prejudgment interest.

For the following reasons, we **REVERSE** and **REMAND** for a disposition consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Kroger Company's Long Term Disability Benefits Plan

The Plan is a long-term disability insurance policy issued by Met Life to Kroger Company employees, with claims for benefits administered by Met Life. The Plan includes a statement granting Met Life the discretionary authority to interpret the Plan's provisions.

The Plan includes a multi-tiered definition of disability. First, the Plan defines disability to mean that due to "sickness, pregnancy, or accidental injury," a beneficiary is under the appropriate care of a physician. Under this definition, to receive LTD benefits, a beneficiary must be disabled from performing his or her occupation for twenty-four months, followed by an inability to perform any occupation. However, this definition of disability is subject to three limitations. The Plan limits monthly benefits to twenty-four months total if the beneficiary falls into one of the three categories. The relevant limitation here limits benefits to twenty-four months if the beneficiary suffers from a neuromusculoskeletal or soft tissue disorder, unless the beneficiary has "objective evidence" of radiculopathy ("Limitation"). The Plan defines radiculopathy as a "[d]isease of the peripheral nerve roots supported by objective clinical findings of nerve pathology."

The Plan outlines a procedure for notification of denial of benefits, whereby if Met Life denies a claim, it will state why it denied the claim. The Plan also provides: "If the initial decision is based in whole or in part on a medical judgment, Met Life will consult with a health care professional with appropriate training and experience in the field of medicine involved in the medical judgment."

## II. Iley's Medical History

In August 1999, Iley suffered a back injury and began to see physicians for pain treatment. Between August 1999 and November 2003, she regularly visited four physicians, none of whom diagnosed Iley with radiculopathy. During that same time period, the physicians performed two back surgeries and ordered multiple diagnostic tests, also without a diagnosis of radiculopathy.

Iley's first and only diagnosis of radiculopathy was on November 3, 2003. One of her physicians noted a diagnosis of radiculopathy on a form that Met Life requested. The physician did not, however, make a notation in the space on the form to list objective findings supporting this diagnosis.

## III. The Procedural History

### A. Iley's LTD Benefits Claim with Met Life

Iley applied for LTD benefits from Met Life and received benefits effective November 11, 2001. In July 2004, Met Life wrote Iley that she fell within the Limitation and that her LTD benefits were terminated. The letter also included the relevant portions of the Plan. Iley appealed this decision and her physicians submitted statements regarding Iley's disability in

conjunction with her appeal. However, none of these statements referenced a current diagnosis of radiculopathy.

Met Life denied Iley's claim after the second review process in January 2005. Met Life indicated that her claim file was reviewed by a "Health Care Professional." Met Life again noted that Iley fell within the Limitation and could no longer receive LTD benefits. With that appeal, Iley exhausted her administrative remedies against Met Life.

**B. The District Court's Decision**

In March 2005, Iley sued Met Life. The district court found that the Plan granted Met Life discretionary authority to interpret the Plan and determine benefit eligibility. Accordingly, the district court applied the arbitrary and capricious standard of review. It also determined that Met Life acted under a conflict of interest because Met Life both decided eligibility for benefits and paid those benefits.

The district court found that in determining Iley did not fall within the Plan's radiculopathy exception, Met Life "ignored" the November 3, 2003 diagnosis of radiculopathy. It also rejected Met Life's conclusion that there was no objective evidence of radiculopathy by pointing to a physician's analysis of a 2001 pre-surgery MRI that indicated displacement of a nerve root. It also pointed to a section of Met Life's internal notations, quoting "electrodiagnostic workups have been supplied supporting Dx or radiculopathy." The district court further held that Met Life acted improperly when it allowed a nurse consultant to review Iley's file. The court rejected Met Life's argument that Iley was required to establish a current diagnosis of radiculopathy at the time of her twenty-four month

review in order to continue receiving LTD benefits, finding the Plan did not set forth this

requirement.

**STANDARDS OF REVIEW**

In an ERISA appeal, a district court's decision is reviewed de novo.  *Killian v. Healthsource*

*Provident Adm'rs Inc.*, 152 F.3d 514, 520 (6th Cir. 1998).  The district court's choice of standard

of review is also reviewed de novo**.**  *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801,

807 (6th. Cir. 2002) (citing *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)).

If the ERISA plan gives the plan administrator or fiduciary the discretionary authority to interpret

the plan, the administrator or fiduciary's determination of ERISA benefits is reviewed under the

deferential arbitrary and capricious standard.  *Marquette Gen. Hosp. v. Goodman Forest Indus.*, 315

F.3d 629, 632 (6th Cir. 2003) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989)).

**DISCUSSION**

**I. Discretionary authority to interpret the Plan's provisions**

The district court correctly held that language in the Plan grants Met Life discretionary

authority to interpret the Plan's provisions.  In a similar situation, this court found the discretionary

language sufficient when it provided that a benefits committee has the discretionary authority to

determine eligibility for benefits and construe the plan's terms and where the language noted that

the committee's decision would be final and beyond review unless a court found it arbitrary and

capricious.  *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845-46 (6th Cir. 2000).

Although the discretionary language in *Emerson* included a specific designation to "The Employee

Benefits Committee," the language is otherwise identical to the discretionary language in the present case. *See id.* Here, although the language does not specifically reference Met Life, there does not seem to be any confusion that Met Life is indeed the fiduciary of which the language speaks.

The arbitrary and capricious standard of review is used where "the plan at issue granted the plan administrator discretionary authority to interpret the terms of the plan and to determine benefits." *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006) (citing *Firestone*, 498 U.S. at 111-115; *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003)). As the Plan granted Met Life discretionary authority, the appropriate standard of review here is arbitrary and capricious.

## II. Met Life's termination of Iley's LTD benefits

Under the arbitrary and capricious standard, we "will uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Glenn*, 461 F.3d at 666 (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

Here, the district court did not appear to give any deference to Met Life's decision. Instead, it conducted an in-depth review of the record, identifying portions of medical reports that might support a diagnosis of radiculopathy. It pointed to a February 2001 MRI as objective evidence of a November 2003 diagnosis of radiculopathy and, in doing so, ignored Met Life's argument that the November 2003 diagnosis required more recent objective evidence. The district court also pointed to statements made by Iley's doctors that she suffered from radicular pain as evidence of the 2003 diagnosis. Finally, the district court used an incomplete statement from Met Life's internal notes as

support for its conclusion that Iley had indeed supplied Met Life with "electrodiagnostic workups." The district court relied on this quote despite a lack of such workups in the administrative record and repeated, subsequent internal notes by Met Life that no such workups existed. However, the November 2003 diagnosis of radiculopathy was unsupported by any objective clinical finding.

The district court held that Met Life was unreasonable in demanding that a physician make a diagnosis of radiculopathy supported by objective clinical findings at the end of the initial twenty-fourth month period in order to continue payment of LTD benefits to a beneficiary. Instead, it found that one such diagnosis, and without citation to objective clinical evidence, is sufficient under the Plan if it was made at any time during the initial twenty-four month period. Under the district court's holding, Met Life would have no way to stop payments of LTD benefits to any beneficiary once a diagnosis has been made, regardless of any contrary opinions in the record, or indication that the beneficiary no longer suffers from that condition.

Met Life was not unreasonable in requiring a diagnosis of radiculopathy, supported by objective clinical findings, at the end of the twenty-four month period. The Plan states that the beneficiary is required to show proof of a continuing disability at the behest of Met Life. The Plan also states that if that disability is radiculopathy, then the diagnosis must be supported by objective clinical findings. A plain reading of the Plan allows Met Life to request a diagnosis of radiculopathy supported by objective evidence at any time, including at the end of the twenty-four month period.

When conducting a review under the arbitrary and capricious standard, a court is allowed to consider a conflict of interest if the same entity both determines benefit eligibility and pays benefits. *Jackson v. Metro. Life*, 24 F. App'x 290, 292 (6th Cir. 2001) (unpublished decision). However, mere

allegation of a conflict of interest will not suffice. *Id.* "There must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." *Id.* (noting it was insufficient for the plaintiff to claim "nothing more than an inherent, structural conflict of interest"). Here, neither Iley nor the district court pointed to any evidence that the alleged conflict of interest affected Met Life's decision to terminate Iley's benefits. As such, it was improper to find that Met Life acted under a conflict of interest.

Finally, despite the district court's contention, this court has never held that a file review by a nurse is an insufficient form of review. In a case markedly similar to the present case, we noted that there is nothing inherently arbitrary and capricious in allowing a nurse to review a beneficiary's file. *Boone v. Liberty Life Assurance Co. of Boston*, 161 F. App'x 469, 474 (6th Cir. 2005) (unpublished decision) (citing *Wages v. Sandler, O'Neill & Partners, L.P.*, 37 F. App'x 108, 110 (6th Cir. 2002)).

Because we hold that the district court erred in finding Met Life arbitrarily and capriciously denied LTD benefits to Iley, we need not decide the questions of attorney fees and prejudgment interest.

**REVERSED and REMANDED** for a disposition consistent with this court's opinion.