McKEAGUE, Circuit Judge,
concurring.
I reluctantly agree with the majority that we should remand to the district court to instruct the Plan to conduct a full review and evaluate Honing’s claim more thoroughly. I write separately for two reasons. First, I believe Koning must have presented evidence of disability around 2012, when she claims she became disabled, rather than presenting the entire record as evidence of disability — including several years where she was able to work. Second, the majority places too much weight on the opinion of Koning’s treating physician and certain favorable aspects of Koning’s medical record. I would emphasize that Koning bears the burden of proving she was disabled, and I identify what I see as Koning’s evidence of disability that the Plan must evaluate on remand.
I
The question before us is Whether Koning proved she became disabled around 2012. “To succeed in [a] claim for disability benefits under ERISA, [a pjlaintiff must prove by a preponderance of the evidence that [s]he was ‘disabled,’ as that term is defined in the plan.” Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. for LBA Employees, 741 F.3d 686, 700-01 (6th Cir.2014) (citation omitted). Here, the Plan defined “disabled” as “a significant change” in “physical functional capacity” which prevented Koning from performing at least one of the material duties of her job.[1] R. 13-2, Policy, Page ID 134-35. Koning presented evidence of physical problems beginning in the early 2000s and continuing until she quit working in July 2012. Critically, Koning continued to work during that entire period. Moreover, Koning did not present evidence that she was unable to perform any of her job duties at any point prior to 2012. From this, we can reasonably infer that, despite her physical problems, Koning was able to perform all the duties of her job and was not disabled until around 2012. As a result, Koning must have presented evidence that her condition worsened around 2012 to the point that she became disabled.
*439 I believe the majority and I agree on this point, see Maj. Op. at 436-38, but I want to emphasize the relevant time period before us. Because Koning continued to work, her physical condition in the years leading up to 2012 cannot be persuasive evidence that she became disabled in 2012. If anything, it serves as evidence that Koning was not disabled in July 2012 unless her physical condition had changed. In my view, her prior condition only provides a baseline to evaluate what may have changed in her physical condition that rendered her unable to work, and our focus should remain on the period leading up to July 2012.
II
With that in mind, although I agree that the Plan’s review was inadequate, I disagree with the majority’s characterization of some of the evidence. The majority identified the following deficiencies in the Plan’s review: (1) the Plan “ignored” favorable evidence from Koning’s treating physician; (2) the Plan failed to conduct its own physical examination and relied on the opinions of nurse file reviewers; and (3) the Plan selectively reviewed Koning’s medical record, particularly her Functional Capacity Evaluation (FCE).
Koning’s Treating Physician. If a plan administrator adopts an opinion that conflicts with that of a treating physician, it must provide reasons for doing so. Shaw v. AT & T Umbrella Benefit Plan No. 1, 795 F.3d 538, 548-49 (6th Cir.2015). Plan administrators may not arbitrarily reject or refuse to consider the opinion of a treating physician, but they “are not obligated to accord special deference to the opinions of treating physicians.” Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Accordingly, courts may not “impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician’s evaluation.” Id. at 834, 123 S.Ct. 1965.
In my opinion, the majority gives too much credit to the opinion of Dr. Fitzgerald, Koning’s treating physician. Dr. Fitzgerald recommended Koning quit working in 2012, but his only explanation was that “as a result of her medical conditions, I agreed that Mrs. Koning should discontinue working.” R. 13-2, Disability Statement, Page ID 159. Dr. Fitzgerald listed Koning’s symptoms, her diagnoses, and her history of back problems before concluding she was “disabled.” Id. at 158-59. But he did not explain why Koning was disabled as of July 2012 when she was not disabled at any point prior to that. My concern is that Dr. Fitzgerald’s conclusion seems to come from the same medical evidence that had been in the record for years when Koning was not disabled.[2] So why did Dr. Fitzgerald conclude Koning was disabled in 2012? Did he diagnose her with a new ailment that prohibited her from working? Did her back problems get worse, or did he simply credit his patient’s otherwise unsupported report that her previously tolerated symptoms had become unbearable? What changed in Koning’s physical condition from the time when she could work with her back problems — and was therefore not disabled — to when she couldn’t? Dr. Fitzgerald did not say, and without more I find his conclusion unconvincing. See Creech v. UNUM Life Ins. Co., 162 Fed.Appx. 445, 454-56 (6th Cir. *440 2006) (per curiam) (finding treating physician’s opinion unpersuasive when he “fail[ed] to support his opinion with data or useful analysis”).
The majority claims the Plan “ignored” favorable evidence from' Dr. Fitzgerald in denying Koning’s claim and “cite[d] no medical evidence in conflict with Dr. Fitzgerald’s conclusions.” Maj. Op. at 434. But, as far as I can tell, the Plan only disagreed with Dr. Fitzgerald’s ultimate conclusion that Koning was disabled. Koning heeded to present evidence that she became disabled around 2012, It would have been difficult, then, for the Plan to cite evidence to refute Dr. Fitzgerald’s opinion when Dr. Fitzgerald himself provided no evidence that Koning’s condition changed around 2012. In other words, I find it hard to identify what evidence the majority could expect the Plan to adduce to refute Dr. Fitzgerald’s unsupported and unexplained opinion.
The majority seems to regard Dr. Fitzgerald’s conclusion as convincing evidence that must be rebutted. See Maj. Op. at 433-35. Although I agree that the treating physician’s opinion is a factor to consider, see Shaw, 795 F.3d at 548-49, I do not believe a conclusory opinion like Dr. Fitzgerald’s should carry much weight. And I certainly do not think we should treat it as near-determinative evidence (as the majority seems to) that Koning was disabled. The burden, of course, remains on Koning to establish disability — not on the Plan to affirmatively counter every unsubstantiated conclusion she asserts.
The Plan’s Failure to Conduct a Physical Examination. The majority also takes issue with the Plan’s use of nurse file reviewers and faults the Plan for not conducting its own physical examination. Maj. Op. at 435-36. The failure to conduct a physical exam, especially when a plan reserves the right to do so, “may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.” Calvert v. Firstar Fin., Inc., 409 F.3d 286, 295 (6th Cir.2005). However, “there is nothing inherently improper with relying on a file review, even one that disagrees with the conclusions of a treating physician.” Id. at 297 n. 6. And plan administrators are permitted to conduct a file-only review instead of a physical exam so long as the. review considers the evidence from the treating physician. This is particularly true when file reviewers do not make credibility determinations or second-guess treating physicians. See Judge v. Metro. Life Ins. Co., 710 F.3d 651, 660 (6th Cir.2013); Creech, 162 Fed.App’x at 454-55.
First, I see no problem with two registered nurses and a vocational expert evaluating Koniñg’s claim. The Plan provided that it would consult with “health care professionals],” and to my knowledge this Court has never required that a file review be conducted by a physician. See Frazier v. Life Ins. Co. of N. Am., 725 F.3d 560 (6th Cir.2013) (affirming denial of disability benefits on basis of file review conducted by nurse case manager); Judge, 710 F.3d at 663 (affirming denial of benefits based on nurse file review); Iley v. Metro, Life Ins. Co., 261 Fed.Appx. 860, 864 (6th Cir.2008) (“[T]his court has never held that a file review by a nurse is an insufficient form of review.”).
Second, from this record, I cannot conclude the file reviewers made a credibility determination or second-guessed the medical evidence of Dr. Fitzgerald. The majority classifies the Plan’s disagreement with Dr. Fitzgerald’s conclusion that Koning was disabled as second-guessing. See Maj. Op. at 436. But while the Plan disagreed with Dr. Fitzgerald’s conclusion, it did not second-guess any of the medical *441 evidence he referred to.[3] The Plan’s reviewers were looking for evidence that Koning’s condition changed in 2012, and (as explained above) Dr. Fitzgerald failed to cite any medical evidence to support a change in Koning’s condition. In other words, there was no evidence — aside from Dr. Fitzgerald’s unsupported conclusion— to second-guess.[4] As such, I cannot fault the Plan for disagreeing with the unsupported conclusion of Koning’s treating physician.
Ultimately, this case hinges on the actual medical evidence in the record that could show Koning became disabled around 2012. As such, I agree with the majority that the Plan’s evaluation of Koning’s claim left much to be desired. However, I would be clear as to what the Plan needs to evaluate on remand.
Koning’s Medical History and FCE. The majority criticizes the Plan for ignoring Koning’s “prior spinal surgeries, [her] MRI results and other tests documenting degenerative disk disease, her reported and documented chronic pain, and her treating physician’s findings.” Maj. Op. at 435. But much of Koning’s medical history, including surgeries in 2002 and 2005 and diagnoses from years past, cannot be persuasive evidence that she became disabled around 2012. Accordingly, we must review the Plan’s evaluation in light of Koning’s evidence from around 2012 — her MRIs, her FCE, and her subjective reports of increased pain — always keeping in mind that Koning bears the burden of proving she was disabled.
I agree with the majority that the Plan failed to adequately explain whether Koning’s MRI results and other medical evaluations evidenced a change in her condition. Koning’s July 2012 MRI indicated mild degenerative change at the C4/C5 and C5/C6 levels. R. 16-2, MRI.Report, Page ID 1052. While that could be evidence of a change in condition, Koning’s 2012 MRI results seem very similar to her August 2006 MRI results. R. 13-2, MRI Report, Page ID 177, 178, 190. The Plan makes no comparison between the two MRIs, and the Plan’s reviewers drew at least one inconsistent conclusion from the July 2012 MRI. Despite the 2012 MRI report clearly indicating “mild right neural foraminal narrowing at C4-5,” the Plan’s reviewer found no evidence of “foraminal stenosis [or narrowing]” in the record. R. 15-5, Medical Record Review, Page ID 858. Based on this record, Koning may have provided evidence that her physical condition changed around 2012. But we are not medical professionals, and this discrepancy is insufficient to enable conclusive evaluation of the Plan’s decision.
Similarly, Koning’s FCE could be evidence of disability. “A functional capacity evaluation is generally a reliable and objective method of gauging the extent one can complete work-related tasks.” Shaw, *442 795 F.3d at 548 (citation omitted); see also Brooking v. Hartford Life & Accident Ins. Co., 167 Fed.Appx. 544, 549 (6th Cir.2006) (describing an FCE as “objective evidence” of claimant’s back pain). The majority concludes the Plan selectively reviewed Koning’s file by failing to account for physical limitations and restrictions found during Koning’s FCE. See Maj. Op. at 434-36. Fair enough; the FCE does list physical limitations that could be evidence Koning became disabled around 2012. But the majority omits one glaring detail about Koning’s FCE: it appears to conclude Koning can work, at least in some capacity. R. 15-3, FCE, Page ID 963-64. According to the Plan’s vocational expert, Koning’s job was classified as “sedentary,” and the FCE suggested Koning could work at the sedentary level. R. 15-4, Occupational Analysis, Page ID 838-40; R. 15-3, FCE, Page ID 963. So while I agree the Plan’s decision did not fully account for the FCE’s restrictions and limi-' tations, the majority misstates the FCE’s significance. I find the FCE inconclusive at best.
Finally, I do not discredit Koning’s reports of pain as providing some evidence that she was unable to work. See Maj. Op. at 436-38. As the majority explains, pain can be evidence of disability despite being inherently subjective. See James v. Liberty Life Assurance Co. of Boston, 582 Fed.Appx. 581, 582 (6th Cir.2014). However, the court awarded benefits in James because the claimant “produced ample subjective and objective evidence that she was unable to return to work.” Id. at 587 (emphasis added). That brings us back to our starting point: Koning bears the burden to demonstrate she is disabled — that is, that her physical condition changed around 2012 to the point where she became disabled. Although I depart from the majority’s view on much of this evidence, I agree that a remand is appropriate for the Plan to consider all the evidence of disability that the Plan appears to have failed to address.
Ill
Koning still bears the burden of proving that she became disabled around 2012, and on this record I am not convinced she has done so. However, I concur in remanding to the Plan to conduct a more thorough review of Koning’s evidence.

. The parties present this inquiry in different ways: Koning focuses on whether she could perform all the material duties of her job, while the Plan focuses on whether Koning had a "significant change" in her physical functional capacity. Regardless of how we frame the question, this case still comes down to whether Koning presented evidence of her disability around 2012.

. Dr. Fitzgerald had been treating Koning since 2009, and his practice had been treating Koning since 2004. Dr. Fitzgerald’s statement does not mention any changes in Koning's condition from when he first began treating her in 2009 to when he concluded she was disabled in 2012.

. The majority argues that the Plan "did not address Dr. Fitzgerald’s medical opinion” because the Plan did not offer medical evidence to contradict Koning’s symptoms. Maj. Op. at 433-34. Again, the Plan was not evaluating whether Koning had symptoms of back pain, but rather whether Koning became disabled around 2012. The Plan denied Koning's claim because it concluded none of these symptoms or diagnoses had changed from the time she was able to work to the time she claimed she was disabled. If Koning’s symptoms were, in fact, the same in 2012 as in years past, then the Plan would not need to "address” or disagree with them to conclude Koning was not disabled.

. While the majority asserts the Plan second-guessed Dr. Fitzgerald by crediting the "assumption” that Koning could do sedentary work, the Plan’s reviewer relied on the FCE’s actual description of Koning’s activity level as sedentary. See R. 15 — 3, FCE, Page ID 963-64.