RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

VIOLET HOGAN,

> *Plaintiff-Appellant,*

v.

> No. 15-5572

JO ELLEN JACOBSON; KEM ALAN LOCKHART,

> *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:12-cv-00820—David J. Hale, District Judge.

Argued: April 21, 2016

Decided and Filed: May 23, 2016

Before: MOORE, GIBBONS, and DAVIS,[*] Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael D. Grabhorn, GRABHORN LAW OFFICE, PLLC, Louisville, Kentucky, for Appellant. Cameron S. Hill, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Chattanooga, Tennessee, for Appellees. **ON BRIEF:** Michael D. Grabhorn, Andrew M. Grabhorn, GRABHORN LAW OFFICE, PLLC, Louisville, Kentucky, for Appellant. Cameron S. Hill, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Chattanooga, Tennessee, for Appellees.

---

[*]The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.    In 2011, Violet Hogan sued the Life Insurance Company of North America for violating the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, by denying her claim for benefits under a disability-insurance policy.  After losing that case, Hogan appealed to this court, which later affirmed the grant of judgment against her.  While that appeal was still pending, Hogan filed the present case in the Jefferson County Circuit Court against Jo Ellen Jacobson and Kem Alan Lockhart, two nurses who worked for the Life Insurance Company of North America and who had provided opinions regarding Hogan's eligibility for disability benefits after reviewing her claim.  Hogan carefully pleaded her claims in the second suit to avoid reference to the Life Insurance Company of North America or ERISA, alleging only that Jacobson and Lockhart committed negligence per se by giving medical advice without being licensed under Kentucky's medical-licensure laws. The defendants removed the case to federal court on the basis of ERISA's complete-preemptive effect, and the district court denied Hogan's attempts to remand the case to state court and later granted the defendants' motion to dismiss.  Because Hogan's artfully pleaded state-law claims are, at bottom, claims for the wrongful denial of benefits under an ERISA plan that arise solely from the relationship created by that ERISA plan, we **AFFIRM** the denial of Hogan's motion to remand.  Further, because Hogan's second claim for benefits is virtually identical to her first and suffers from the same infirmities, and because her new claim under a different portion of ERISA fails to state anything beyond conclusory allegations, we **AFFIRM** the grant of the defendants' motion to dismiss.  Finally, we **DENY** the defendants' motion for sanctions on appeal because Hogan's arguments are not frivolous.

## I. BACKGROUND

Hogan was employed by SHPS, Inc., through which she was covered by a disability-insurance policy.  *See* R. 43 (Am. Compl. ¶ 12) (Page ID #697).  During the course of her employment, she "became disabled and unable to continue working at SHPS, Inc." *Id.* ¶ 13 (Page ID #697).  The disability-insurance policy made Hogan "eligible to seek and to receive

short term disability benefits" and separately allowed her to receive long-term disability benefits if she was "disabled for 180 days." *Id.* ¶ 14 (Page ID #697).

Jo Ellen Jacobson and Kem Alan Lockhart worked for the insurance company that supplied the policy, and neither is licensed to practice medicine or psychology in Kentucky. *See id.* ¶¶ 16–18 (Page ID #697). They "each provided opinions concerning Mrs. Hogan's diagnosis and treatment[,] including her physical and mental restrictions and limitations." *Id.* ¶ 19 (Page ID #697–98). Neither opinion was favorable to Hogan's application for benefits. *See id.* Hogan claims that Jacobson and Lockhart "individually and jointly knowingly provided the illegal medical and psychological opinion," doing so "for their own financial gain, both in terms of favorable performance reviews and in compensation." *Id.* ¶ 20 (Page ID #698).

On February 4, 2011, Hogan filed an ERISA lawsuit in federal court in Kentucky "alleging improper denial of [short-term disability] benefits and amended her complaint later that month to include a claim for improper denial of [long-term disability] benefits." *Hogan v. Life Ins. Co. of N. Am.* ("*Hogan I*"), 521 F. App'x 410, 414 (6th Cir. 2013). Hogan's short-term disability claim was rejected by the district court and, on appeal, by our court, which found that the denial of benefits was not arbitrary or capricious. *See id.* at 414–17. We also held that Hogan's claim for long-term disability benefits failed because "she did not first seek these benefits from [the Life Insurance Company of North America] and therefore she failed to exhaust administrative remedies with respect to this claim." *Id.* at 417.

After the district court's decision in that case, but before our ruling, Hogan filed the present action in Kentucky state court. *See* R. 1-3 (Compl.) (Page ID #15–18). She alleged that Jacobson and Lockhart were liable for negligence per se, under the theory that Kentucky's licensing statutes for medical professionals, KY. REV. STAT. § 311.560, and psychologists, KY. REV. STAT. § 319.005, are violated when an unlicensed individual working for an insurance company makes a disability determination in connection with an application for disability benefits. *See* R. 1-3 (Compl. ¶¶ 16–19) (Page ID #17). The defendants removed the action to federal court on the basis of complete ERISA preemption. *See* R. 1 (Notice of Removal at 2–3) (Page ID #2–3).

The district court denied Hogan's motion to remand the case, R. 23 (Sept. 26, 2013 Opinion) (Page ID #605–12), and her motion to reconsider that decision, R. 38 (Mar. 12, 2014 Opinion) (Page ID #681–87). In response, Hogan filed an Amended Complaint, which continued to plead her state-law claim "for the sole purpose of preserving her right to pursue said claim at such future time as the Court allows," R. 43 (Am. Compl. at 4 n.1) (Page ID #698), and added an ERISA claim under 29 U.S.C. § 1140 for interference with Hogan's right to obtain disability benefits under the insurance policy, *id.* ¶¶ 28–32 (Page ID #699). The defendants moved to dismiss, and the district court granted the motion in full. R. 56 (Apr. 28, 2015 Opinion) (Page ID #812–18).

## II. ANALYSIS

### A. Complete Preemption

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). One basis for removal is federal-question jurisdiction, which exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. We determine whether a case raises a federal question by reference to "the 'well-pleaded complaint' rule," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Franchise Tax Bd. v. Const. Laborers Vacation Tr.*, 463 U.S. 1, 9–10 (1983)), which directs us to look only to "what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose," *id.* (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)).

"Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint," meaning "that a case may *not* be removed to federal court on the basis of . . . the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93 (1987). But an exception to the well-pleaded complaint rule arises from the "misleadingly named doctrine" of complete preemption, *Hughes*

*v. United Air Lines, Inc.*, 634 F.3d 391, 393 (7th Cir.), *cert. denied*, 132 S. Ct. 103 (2011), which is more aptly described as a "jurisdictional" doctrine, *Loffredo v. Daimler AG*, 500 F. App'x 491, 500 (6th Cir. 2012). "On occasion, the [Supreme] Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "[T]he question whether a certain state action is preempted by federal law is one of congressional intent." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137–38 (1990) (alteration in original) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985)).

Congress has expressed such an intent in ERISA, which "can preempt state-law claims in two ways: complete preemption under 29 U.S.C. § 1132(a) and express preemption under 29 U.S.C. § 1144." *Loffredo*, 500 F. App'x at 500. Express preemption under § 1144 does not provide a basis for removal because it creates only a traditional preemption defense. *See Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 612 (6th Cir. 2013). Section 1132(a), by contrast, "is part of a 'civil enforcement scheme' whose 'comprehensive' and 'carefully integrated' character 'provide[s] strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* at 613 (alteration in original) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). Accordingly, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209.

> A claim is within the scope of § 1132(a)(1)(B) for that purpose if two requirements are met: (1) the plaintiff complains about the denial of benefits to which he is entitled "only because of the terms of an ERISA-regulated employee benefit plan"; and (2) the plaintiff does not allege the violation of any "legal duty (state or federal) independent of ERISA or the plan terms."

*Gardner*, 715 F.3d at 613 (quoting *Davila*, 542 U.S. at 210). Hogan argues that neither requirement was met in this case, so her motion to remand was erroneously denied. We "review[] *de novo* the existence of subject matter jurisdiction as a question of law; factual determinations regarding jurisdictional issues are reviewed for clear error." *Grand Trunk W.*

*R.R. Inc. v. Bhd. of Maint. of Way Emps. Div.*, 497 F.3d 568, 571 (6th Cir. 2007) (quoting *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 613 (6th Cir. 2001)).

### 1. Hogan Complains of the Denial of ERISA Benefits, Notwithstanding Her Artful Pleading to the Contrary.

Hogan asserts that the defendants "conceded" *Davila*'s first prong when they asserted that Jacobson and Lockhart are not proper defendants to a § 1132 claim. Although it is true that neither Jacobson nor Lockhart is "the plan administrator," who would be "the proper defendant in an ERISA action concerning benefits," *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 522 (6th Cir.), *cert. denied*, 562 U.S. 841 (2010), Hogan misreads *Davila* and *Gardner* to suggest that § 1132 preemption exists only if the plaintiff's claim is both a claim about the denial of ERISA-plan benefits based on the terms of an ERISA plan (what *Gardner* and *Davila* actually require) *and* is brought against a defendant that is a proper defendant for such an ERISA-benefits claim (which neither *Gardner* nor *Davila* suggests). To limit § 1132 preemption in this way would create the odd result that claims about the denial of ERISA-plan benefits would remain in state court if the plaintiff sued the wrong party. But we have explained that "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit," *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002), so, "[w]here it appears that the plaintiff may have carefully crafted her complaint to circumvent federal jurisdiction, 'we consider whether the facts alleged in the complaint actually implicate a federal cause of action,'" *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 358 (6th Cir.) (quoting *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 561 (6th Cir. 2007)), *cert. denied*, 136 S. Ct. 243 (2015). Hogan therefore may not evade complete preemption merely by suing the wrong party.

"To determine whether [a] cause[] of action fall[s] 'within the scope' of [§ 1132(a)(1)(B)], we must examine [the] complaint[], the statute on which [the plaintiff's] claims are based[,] . . . and the various plan documents." *Davila*, 542 U.S. at 211. A claim likely falls within the scope of § 1132 when "[t]he only action complained of" is a refusal to provide benefits under an ERISA plan and "the only relationship" between the plaintiff and defendant is based in the plan. *See id.* For that reason, claims purporting to challenge the

actions of medical providers are nonetheless claims for ERISA benefits when the medical determinations challenged were made solely in the course of an ERISA-benefits determination and the damages alleged arise from the denial of benefits. *See, e.g.*, *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 6 (1st Cir. 1999) (allegation of negligent medical decisionmaking in connection with an insurance "precertification" determination was a preempted claim for ERISA benefits because "the conduct was indisputably part of the process used to assess a participant's claim for a benefit payment under the plan," making the negligence claim "an alternative enforcement mechanism to ERISA's civil enforcement provisions" (internal quotation marks omitted)); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1489 (7th Cir. 1996) (claim that a nurse breached a duty of care with respect to the plaintiff's medical treatment was a preempted claim for benefits because the defendant nurse was alleged to have "determined that said course of treatment was not medically necessary" during a benefits determination); *Gibson v. Prudential Ins. Co. of Am.*, 915 F.2d 414, 417 (9th Cir. 1990) (claims of fraud against a claim-processing company and doctors were preempted because the "complaint alleges violations of duties created by the administration of the disability benefit plan" and "[t]here would be no relationship or cause of action . . . without the plan").

Hogan's negligence per se claim is merely an artful reassertion of her claim for ERISA benefits from *Hogan I*. Although Hogan ostensibly challenges the qualifications of Jacobson and Lockhart to review her medical file, her claim is necessarily premised on the existence of *some* relationship between herself and the defendants. It cannot be ignored that the entire relationship between the parties was limited to the defendants' review of Hogan's medical file, which arose solely in connection with a disability-benefits determination. As a Kentucky federal district court found in rejecting this same theory raised by Hogan's counsel in another case, the plaintiff "essentially argues that [the defendants] negligently processed [her] claim in violation of K.R.S. § 311.560 and that [she] was damaged by [the insurance company's] denial of [her] claim for long-term disability benefits." *Hackney v. Allmed Healthcare Mgmt., Inc.*, No. 3:15-CV-00075-GFVT, 2015 WL 8682184, at *3 (E.D. Ky. Dec. 11, 2015); *see also Milby v. Liberty Life Assur. Co. of Bos.*, 102 F. Supp. 3d 922, 935 (W.D. Ky. 2015) (rejecting the same argument—also made by Hogan's counsel—in part because the claim "complain[s] of the denial of [long-term disability] benefits to which [the plaintiff] is supposedly entitled only by reason of an ERISA-

regulated plan" and because the defendant's "sole connection to Plaintiff is its role as issuer and underwriter of the . . . policy," while its "review and subsequent termination of the . . . benefits make up the alleged wrongful conduct"). Indeed, Hogan states that she "continues to be damaged by Defendants' actions," without describing that damage, R. 43 (Am. Compl. ¶ 26) (Page ID #699), but the only possible damages arise from the ultimate denial of disability benefits. Thus, Hogan's claim concerns a relationship created solely by the ERISA plan and an incident that is subsumed entirely within the denial of benefits under an ERISA plan. Careful pleading to avoid reference to the denial of benefits, the basis for Hogan's damages, and the context in which her relationship with the defendants arose cannot change the substance of her claim.

Nor are we persuaded by Hogan's assertions that the preceding analysis confuses express preemption under § 1144—which applies whenever the state-law basis for the claim "may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a)—with complete preemption under § 1132. Although "[o]ur prior ERISA preemption cases have not always clearly differentiated between the two concepts," *Loffredo*, 500 F. App'x at 500, the distinction is clear: "[C]ompletely preempted claims 'fall within the scope' of ERISA's civil-enforcement regime, and expressly preempted claims interfere with that regime," *id.* at 501 (quoting *Davila*, 542 U.S. at 221). Our conclusion—like the district court's—is *not* that Hogan's assertion of a separate state-law negligence claim against Jacobson and Lockhart "relates" to the ERISA benefit plan or may interfere with it; rather, we hold that Hogan's claim *is* a claim for ERISA benefits because the negligence it alleges, though carefully veiled, is the negligent processing and denial of her claim for ERISA benefits, which, Hogan's protestations aside, arise solely from the ERISA plan.

### 2. The Legal Duty that Hogan Seeks to Enforce is Grounded in the ERISA Plan.

As for the second part of the *Davila* test—whether the plaintiff alleges the violation of an independent legal duty, 542 U.S. at 210—Hogan argues that her claim is predicated on the independent legal duty created by Kentucky's medical-licensing requirements. But she ignores that a duty cannot have arisen out of thin air; instead, some relationship between her and the

defendants must have created it. Her careful pleading does not change the fact that this relationship arises solely from an ERISA-benefits plan.

"Whether a duty is 'independent' of an ERISA plan, for purposes of the *Davila* rule, does not depend merely on whether the duty nominally arises from a source other than the plan's terms." *Gardner*, 715 F.3d at 613. The Supreme Court's decision in *Davila* illustrates why. There, the Supreme Court found that a state-law-based duty of ordinary care did not supply a legal duty independent of ERISA where it was used to claim that an employee-benefit plan had wrongly declined to cover particular medical services:

> The [state law] does impose a duty on managed care entities to exercise ordinary care when making health care treatment decisions, and makes them liable for damages proximately caused by failures to abide by that duty. However, if a managed care entity correctly concluded that, under the terms of the relevant plan, a particular treatment was not covered, the managed care entity's denial of coverage would not be a proximate cause of any injuries arising from the denial. Rather, the failure of the plan itself to cover the requested treatment would be the proximate cause.

*Davila*, 542 U.S. at 212–13 (internal quotation marks and citation omitted). This meant that the "potential liability under the [state law] . . . derives entirely from the particular rights and obligations established by the benefit plans." *Id.* at 213.

Similarly, the duty that Hogan alleges in this case ostensibly arises under state law, which mandates that those practicing medicine and psychology in Kentucky be licensed by the state. *See* KY. REV. STAT. §§ 311.560(1), 319.005(1). Hogan's theory is that Jacobson and Lockhart committed negligence per se because they engaged in the practice of medicine and psychology, but did not have a Kentucky license. This argument ignores the key fact that the relationship between the parties arose in the context of a benefits-review process under an ERISA plan, and that Hogan's claimed damages flow entirely from the denial of her request for benefits. Thus, any duty that the defendants in this case owed Hogan arose solely because of and within the context of the benefits review required by the plan. *See Hackney*, 2015 WL 8682184, at *3 (because the claim "arises solely in the context" of the review of a disability-benefit claim, "[t]he medical professionals . . . were not providing medical care," and the sole relationship arose from the disability-insurance policy, "[t]he Court cannot find any basis for a legal duty independent of

ERISA"); *Milby*, 102 F. Supp. 3d at 935 ("Though Plaintiff asserts violations of Kentucky's medical licensing statutes, the purported duty only arises . . . because of [defendant's] role in reviewing the claim for [long-term disability] benefits.").[1]

Hogan's case is therefore distinct from those she cited in which a truly independent state-law tort claim is brought between parties that happen also to have an ERISA-based relationship. *See, e.g.*, *Gardner*, 715 F.3d at 614–15 (claim for tortious interference with contract against executives of a company and a company investor who allegedly induced the company to cancel a supplemental executive retirement plan in connection with the sale of the investor's ownership share); *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186, 193–94 (4th Cir. 2002) (state-law tort claims against employer and disability-benefits administrator that the administrator had "solicited and disseminated [the plaintiff's] private medical information in order to assist [the employer] in its efforts to declare [the plaintiff] a 'direct threat' to her coworkers so that she could be fired"); *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 984 (9th Cir. 2001) (claim that disability-insurance agency was liable for tortious invasion of privacy in connection with actions of investigators tasked with uncovering information regarding plaintiff's alleged return to other work); *Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996) (fraud claim by trustees of a multiemployer healthcare trust arising out of defendant's allegedly fraudulent representation that an individual was an employee of a member employer, thereby entitling that individual to medical coverage).

\* \* \*

Accordingly, Hogan's state-law claim is merely an artfully pleaded claim for ERISA benefits, which ultimately arises out of the relationship created by an ERISA plan. The district court was therefore correct to deny her motion to remand.

---

[1]Hogan's attempt to minimize the impact of the ERISA plan as bearing only on the calculation of damages obscures the vital role the plan plays in the existence of a duty in the first place. The cases that Hogan cites on this point dealt with the distinct issue that arises when a wholly independent legal claim happens to seek relief in the form of money that would have been awarded under an ERISA plan. For example, we have held that a plaintiff who claims that his employer "misrepresented the monthly pension to which he would be entitled after five years of employment with the company" and who brings a claim for fraudulent misrepresentation seeking reliance damages has an independent claim based on having "left his former job based on the promise that he would qualify for certain benefits." *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 857, 864 (6th Cir. 2007). Hogan, by contrast, had no other relationship or interaction with Jacobson and Lockhart that could have given rise to such an independent claim.

**B. Failure to State a Claim**

After finding that Hogan's state-law claims were completely preempted, the district court allowed her to amend her complaint to state any federal claims she wished. In response, Hogan sought to plead a claim under 29 U.S.C. § 1140 for "interfer[ence] with [her] protected rights," while restating her state-law claim "for the sole purpose of preserving her right to pursue said claim at such future time as the Court allows." R. 43 (Am. Compl. at 4 n.1 & ¶¶ 28–32) (Page ID #698–99). In addressing the defendants' motion to dismiss the Amended Complaint, the district court held that Hogan's state-law claim must be recast as a claim for benefits under § 1132, but that this claim failed because: (1) Hogan sought only long-term disability benefits, but failed to exhaust her administrative remedies; and (2) Jacobson and Lockhart were not "responsible for approving or denying claims" and therefore were not the proper defendants to a § 1132 claim. *See* R. 56 (Apr. 28, 2015 Opinion at 4–5) (Page ID #815–16). The district court also held that Hogan failed to state a claim for relief under § 1140 because "she does not allege any action by either [defendant] that is prohibited under section 1140." *Id.* at 6 (Page ID #817).

"We review de novo the district court's ruling on a motion to dismiss a claim." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008), *cert. denied*, 555 U.S. 1099 (2009). "A claim survives such a motion if its '[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.'" *Id.* (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[W]e construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Id.* (alterations in original) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

**1. Hogan's § 1132 Claim**

Because Hogan's state-law claim is completely preempted, the district court could have directed Hogan to amend her complaint once more to plead only federal claims. Instead, it recast the state-law claim as one for benefits under 29 U.S.C. § 1132(a)(1)(B). *See* R. 56 (Apr. 28, 2015 Opinion at 4) (Page ID #815). Given that Hogan had already amended her complaint, and that she included her state claim solely as a placeholder, R. 43 (Am. Compl. at 4 n.1) (Page ID #698), the district court appropriately recast the claim rather than mandating another amendment.

The district court was also correct to dismiss Hogan's § 1132 claim, for three independent reasons: *First*, the defendants are nurses employed by the company that administered Hogan's insurance benefits, but "the proper defendant in an ERISA action concerning benefits is the plan administrator." *Riverview Health Inst.*, 601 F.3d at 522. *Second*, Hogan seeks to recover only for injuries related to the denial of her request for long-term disability benefits, R. 43 (Am. Compl. ¶ 22) (Page ID #698), yet we held in *Hogan I* that she had failed to exhaust her administrative remedies regarding long-term disability benefits, 521 F. App'x at 417, and Hogan alleges nothing to suggest that things have changed. *Third*, Hogan's § 1132 claim is barred by res judicata, which prevents the relitigation of causes of action when four requirements are met:[2]

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). The first, third, and fourth factors are satisfied because the benefits claim in *Hogan I* is all but identical to the one brought here. As for the second element, the fact that *Hogan I* was brought against the Life Insurance Company of North America, while this case is brought against two medical reviewers employed by that company, is immaterial because res judicata applies when the later action involves a party that was in privity with a defendant in the prior action. *See, e.g.*, *Silva v. City of New Bedford*, 660 F.3d 76, 80 (1st Cir. 2011) ("privity" reaches employer–employee relationships), *cert. denied*, 132 S. Ct. 1808 (2012).

---

[2]Contrary to Hogan's claim that we cannot reach this issue because the district court elected to rely on other grounds to dismiss the case, "we 'may affirm on any grounds supported by the record even if different from the reasons of the district court.'" *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002)).

### 2. Hogan's § 1140 Claim

Hogan's Amended Complaint added an ERISA claim under 29 U.S.C. § 1140, which makes it

> unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

"[T]he emphasis of a [§ 1140] action is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992). "A [§ 1140] plaintiff must . . . show more than the mere denial of a claim to establish that an insurer has acted with the intent of interfering with a future right under 29 U.S.C. § 1140." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993).

Hogan asserts that she properly stated a claim under § 1140 by recounting how Jacobson and Lockhart provided inaccurate opinions regarding her eligibility for disability benefits "for their own financial gain," knowing that this "would interfere with Mrs. Hogan's right to pursue, attain and receive long term disability benefits" and "with the express purpose of denying Mrs. Hogan her long term disability benefits." *See* R. 43 (Am. Compl. ¶¶ 16–22, 28–32) (Page ID #697–99). Because a § 1140 action requires "more than the mere denial of a claim," *Custer*, 12 F.3d at 422, it was incumbent upon Hogan to explain what Jacobson and Lockhart did to interfere with her ability to obtain benefits beyond their role in the review and denial of her claim. Instead, Hogan's allegations are mere recitations of the statutory language barring "interference" with obtaining benefits. These bare allegations that the defendants "sought to render a diagnosis and treatment conclusion that would prevent Mrs. Hogan from becoming eligible to receive her long term disability insurance benefits," R. 43 (Am. Compl. ¶ 21) (Page ID #698), that they intended to cause and did cause the denial of Hogan's claim for benefits, *id.* ¶ 22 (Page ID #698), and that their "actions were designed to interfere with [Hogan] filing a claim, from becoming eligible, and ultimately from receiving the monthly income benefits," *id.*

¶ 30 (Page ID #699), do nothing to explain *how* Jacobson or Lockhart interfered beyond their involvement in the denial of her claim.  Accordingly, Hogan failed to state a § 1140 claim.**[3]**

## C. Sanctions

Over the course of this litigation, the defendants twice sought to obtain sanctions against Hogan and her counsel.  *See* R. 10-2 (Mem. in Supp. of First Mot. for Sanctions at 16–26) (Page ID #110–20); R. 57 (Second Mot. for Sanctions at 5–8) (Page ID #823–26).  The district court denied the first motion as premature, R. 38 (Mar. 12, 2014 Opinion at 6) (Page ID #686), and stayed the second motion pending appeal, R. 67 (Dec. 3, 2015 Order) (Page ID #857).  Nonetheless, the defendants moved for sanctions on appeal, relying on Federal Rule of Appellate Procedure 38 and 28 U.S.C. §§ 1912 and 1927.

These provisions provide overlapping standards.  Federal Rule of Appellate Procedure 38 provides for sanctions "[i]f a court of appeals determines that an appeal is frivolous."  "Sanctions under Fed. R. App. P. 38 are 'appropriate when an appeal is wholly without merit and when the appellant's arguments essentially had no reasonable expectation of altering the district court's judgment based on law or fact.'"  *Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 439 (6th Cir. 2012) (quoting *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 270 (6th Cir. 2008)).  Although a finding of bad faith is not required for imposition of Rule 38 sanctions, "we

---

**[3]**On appeal, Hogan asserts that if her factual allegations were inadequate, she should have been given an opportunity to amend her complaint rather than having the case dismissed.  Typically, we hold that "if the requisite allegations are not in the complaint and a motion to dismiss for failure to state a claim upon which relief may be granted is made under Rule 12(b)(6), the pleader should be given the opportunity to amend the complaint, if she can, to show the existence of the missing elements."  *Walker v. Shermeta, Adams, Von Allmen, PC*, 623 F. App'x 764, 768 (6th Cir. 2015) (quoting 5 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1216 (3d ed. 2015)).  Such a course of action makes sense when the plaintiff has sought leave to amend before the district court (including in a later motion to alter or amend the judgment), or otherwise provided an explanation of what additional factual content might be pleaded in an amended complaint.  *See, e.g.*, *id.* (viability of complaint could potentially be saved by attaching or discussing a note related to a loan agreement, which was discussed during oral argument before the district court).  Where a plaintiff provides nothing from which a court can infer that a request to amend would not be futile, dismissal is appropriate.  *See, e.g.*, *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) (affirming dismissal, even where plaintiff sought to amend in a post-judgment motion to alter or amend, because "[n]othing the Receiver has brought forward so far, either in its complaint allegations, its arguments in favor of its motion to alter or amend, or its arguments on appeal, sufficiently supports its theory").  Hogan never sought leave to amend before the district court and provides nothing from which we could infer that she could amend her complaint to explain what action Jacobson and Lockhart took that exceeded the "mere denial of a claim."  *Custer*, 12 F.3d at 422.  Indeed, the facts as alleged in the Amended Complaint suggest that the defendants had no involvement with Hogan except for their role in the benefits-review process.

will usually impose Rule 38 . . . sanctions only where there was some improper purpose, such as harassment or delay, behind the appeal." *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir. 1997). 28 U.S.C. § 1912 provides that "[w]here a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs." It "is 'similar'" in application to Rule 38, *Kempter v. Mich. Bell Tel. Co.*, 534 F. App'x 487, 493 (6th Cir. 2013) (quoting *Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012)), *cert. denied*, 134 S. Ct. 1764 (2014). Finally, § 1927 declares that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 allows for sanctions when the "attorney knows or reasonably should know that a claim pursued is frivolous," *Scherer*, 508 F. App'x at 439 (quoting *Tareco Prop., Inc. v. Morriss*, 321 F.3d 545, 550 (6th Cir. 2003)). "Section 1927 sanctions may be imposed without a finding that the lawyer subjectively knew that his conduct was inappropriate," but "the conduct must exceed 'simple inadvertence or negligence that frustrates the trial judge.'" *Id*. (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)).

The defendants argue that these standards are met because of Hogan's careful attempts to ignore the existence of *Hogan I* as well as the precise contours of the relationship between herself and the defendants. The defendants target all of the issues in this case for sanctions: (1) Hogan's attempts to avoid complete preemption; (2) the manner in which Hogan pleaded her claim for ERISA benefits; and (3) the manner in which Hogan pleaded her § 1140 claim. The latter two points, however, relate to nothing more than garden-variety losing arguments. Hogan's pleading of her ERISA-benefits claim is not sanctionable due to her suing the wrong party or failing to explain how she solved her prior administrative-exhaustion problem because she was not trying to plead an ERISA claim at all; rather, her state-law claims were interpreted as such because she lost her complete-preemption argument. Hogan's § 1140 claim, while factually deficient, fails for reasons no different than a run-of-the-mill failure to state a claim, and the defendants cite no authority to support the proposition that sanctions are justified solely because a complaint contains conclusory allegations.

The defendants' true focus is on whether Hogan's attempt to avoid pleading a claim that could be removed to federal court, along with her creative arguments against removal and failure to cite unfavorable district court precedent, are sanctionable. To be sure, Hogan's counsel has lost variations of this argument repeatedly in Kentucky federal district courts.[4] But these decisions are not binding, and Hogan offers reasons why some are arguably distinguishable from this case.[5] At bottom, Hogan's counsel appears to have come up with a novel legal theory, and this is the first case to reach the appellate courts based on that theory. Counsel would have done well to acknowledge more fully the existing unfavorable case law, but that precedent is not so strong as to establish that the appeal is frivolous and clearly could not succeed. Especially in an area of law as complex and fact-intensive as ERISA preemption, we are reluctant to sanction an unsuccessful attempt to push the boundaries of that doctrine absent stronger indications that the arguments were frivolous or that the appeal was otherwise brought in bad faith or to delay or to harass.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the denial of Hogan's motion to remand and the grant of the defendants' motion to dismiss and **DENY** the defendants' motion for sanctions on appeal.

---

[4]*See, e.g.*, *Milby*, 102 F. Supp. 3d at 935 (finding that claim under Kentucky medical licensing laws was completely preempted by ERISA); *Hanshaw v. Life Ins. Co. of N. Am.*, No. 3:14-CV-00216, JHM, 2014 WL 5439253, at *5–6 (W.D. Ky. Oct. 24, 2014) (same); *Anderson v. Standard Ins. Co.*, No. 3:14-CV-00051-H, 2014 WL 5366117, at *3 (W.D. Ky. Oct. 20, 2014) (rejecting argument that the Kentucky licensing statutes are violated when an unlicensed individual reviews a request for disability benefits and distinguishing the same Kentucky Board of Medical Licensure decisions on which Hogan relies); *Hackney v. Lincoln Nat'l Life Ins. Co.*, No. 3:12-CV-00170-CRS, 2014 WL 2440691, at *13–14 (W.D. Ky. May 30, 2014) (same), *appeal docketed*, No. 15-5606 (6th Cir. June 8, 2015).

[5]Many of the cases involved insurance-company defendants, so a § 1132 claim could have been brought against such defendants, unlike Jacobson and Lockhart who are improper defendants to a § 1132 claim. Although Hogan overemphasizes the importance of this distinction by reading the Supreme Court's decision in *Davila* to stand for the proposition that a state-law claim against a particular defendant will be completely preempted only when it could have been brought as a § 1132 claim *against that defendant*, *supra* at 6, her misunderstanding is not so egregious as to warrant sanctions.