NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0323n.06

Case No. 21-1203

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES of AMERICA, | ) | **FILED**<br>Aug 08, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE EASTERN<br>DISTRICT OF MICHIGAN |
| SCHAFER AND WEINER, PLLC, *et al.*, | ) | |
| Defendants-Appellees. | ) | |

Before: BATCHELDER, WHITE, and BUSH, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** The United States, on behalf of the Internal Revenue Service (IRS), sued two professional firms (the "Professionals"), Schafer and Weiner, PLLC (S&W) and Harmon Partners, LLC (HP), based on events that arose in a prior, separate bankruptcy case. Upon finding that res judicata barred the IRS's claims because it could have raised them in the bankruptcy case, the district court dismissed the complaint. *United States v. Schafer & Weiner, PLLC*, No. 2:19-cv-13696, 2020 WL 7770907 (E.D. Mich. Dec. 30, 2020). On appeal, the IRS contends that res judicata does not bar its claims here because the bankruptcy court did not have jurisdiction to decide them there. We disagree and AFFIRM.

**I.**

In March 2019, Central Processing Services, LLC (CPS) petitioned for bankruptcy under Chapter 11, intending to reorganize as a debtor in possession. The bankruptcy court appointed the Professionals to assist CPS, appointing S&W as legal counsel and HP as financial advisor. The IRS was CPS's largest individual creditor, with a claim of just under $6.9 million.

Over the next five months, CPS continued to operate its business, albeit at a substantial and continuing loss. During that time, CPS delivered $83,000 to the Professionals ($58,000 to S&W and $25,000 to HP), which the Professionals held in escrow pending the bankruptcy court's approval of their actual fees. CPS also paid wages to its employees and withheld $286,878 in federal income tax from those wages. But CPS did not pay that withheld money to the IRS.

On August 1, 2019, the IRS moved the bankruptcy court to dismiss the case due to CPS's failure to pay post-petition taxes, 11 U.S.C. § 1112(b)(4)(I), and because reorganization was unlikely to succeed, § (b)(4)(A). The bankruptcy court granted the motion at a hearing on September 6, 2019, and entered a formal judgment dismissing the case on September 23, 2019.

On October 4, 2019, the IRS filed a post-dismissal motion demanding a pro rata share of the $83,000 in escrowed money. The IRS argued that the escrowed money was part of the bankruptcy estate; that the Professionals and the IRS were both administrative claimants, § 503(b)(1)(A)(i) & (B), with equal priority, § 507(a)(2); and, therefore, the Bankruptcy Code required the court to split the escrowed money between them pro rata, § 726(b). The IRS further argued that, because the Professionals had physical possession of the escrowed money, the court had to order disgorgement of the IRS's pro rata portion from the Professionals to the IRS. The court denied the motion, explaining that the dismissal of the case had re-vested the escrowed money in CPS pursuant to § 349(b)(3), so there was no bankruptcy estate to divide pro rata and—more to the point—because the escrowed money belonged to CPS, disgorgement *from* the Professionals *to* the IRS was impossible. *See* Bankr. No. 19-43217, Dkt. 153, p. 16-17 (Order).

Meanwhile, the Professionals had submitted fee applications to the bankruptcy court, seeking approval of the fees and expenses accrued in representing CPS, and seeking an order awarding them payment of the approved fees. The IRS contested the fee applications, arguing

that CPS's outstanding tax debt (i.e., $6.9 million in pre-petition taxes and $286,878 in post-petition taxes) meant that CPS had no money; rather, any money in CPS's possession belonged to the IRS, as did the escrowed money. The IRS argued that because CPS had no money, the bankruptcy court could not order CPS to pay any money to the Professionals (i.e., could not "award" the Professionals *any* money), so the bankruptcy court could not *approve any* fees. The bankruptcy court held a hearing, considered the fee applications pursuant to § 330(a), and approved a portion of the requested fees: $98,566 for S&W and $33,390 for HP.

The IRS separately appealed the two judgments—one denying its disgorgement motion and the other approving the Professionals' fee applications—to the district court, which affirmed both, concluding that "[t]he IRS's remedy for [CPS]'s failure to pay taxes does not lie with the [P]rofessionals' fees." *In re Cent. Proc. Servs., L.L.C.*, No. 2:19-13427, 2020 WL 5596094, at *8 (E.D. Mich. Sept. 18, 2020) (disgorgement case); *In re Cent. Proc. Servs., L.L.C.*, No. 2:19-13711, 2020 WL 5596095, at *4 (E.D. Mich. Sept. 18, 2020) (fee application case).

The IRS appealed both decisions to this court but voluntarily dismissed both appeals. *See United States v. Cent. Processing Servs., LLC*, 20-2120 (6th Cir. 2020); *United States v. Schafer & Weiner PLLC*, 20-2147 (6th Cir. 2020). Thus, the judgments in the first action are final and binding. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950) ("[T]he judgment in the first suit would be binding in the subsequent ones if an appeal, though available, had not been taken or perfected."); 18A Wright & Miller, Federal Practice and Procedure § 4433 (3d ed. 2021) ("[O]nce the time for appeal has run, a final judgment of a trial court . . . is res judicata without regard to the fact that appeal might have been taken to a higher court."). Thus ended the prior bankruptcy case.

The Professionals took the escrowed money that each held in its physical possession. Nothing in the record indicates that either S&W or HP obtained from CPS any more of its award than that which each held in escrow. That is, despite being awarded fees of $98,566, it appears that S&W collected only the $58,000 it held in escrow and not the remaining $40,566. Similarly, it appears that HP collected only the $25,000 it held in escrow and not the remaining $8,390.

## II.

In the present case, the IRS sued the Professionals directly, claiming ownership of the escrowed money and demanding its "return." The Professionals moved the district court to dismiss the suit and the court agreed, finding that the IRS could have raised its claims in the bankruptcy proceeding, but did not, so res judicata barred the suit. *Schafer & Weiner*, 2020 WL 7770907, at *1. The district court explained that the IRS "advances two new theories related to the same disputed funds that were at issue in [CPS]'s Chapter 11 bankruptcy matter." *Id.* at *5. These two new theories were that the escrowed money was subject to: (1) a trust held in favor of the IRS for the post-petition tax debt, 26 U.S.C. § 7501(a); and (2) a federal tax lien for the pre-petition tax debt, § 6321. *See id.* at *1. The Professionals argued that the IRS "had the opportunity to raise these new theories about the disputed fees in the prior [bankruptcy] action and that these claims arise out of the same operative facts." *Id.* The IRS answered that, "because the bankruptcy court had abstained from exercising jurisdiction over the disputed funds in [the Professionals'] possession, [the IRS] could not have litigated the issue in the prior action." *Id.* at *8. The district court rejected that claim, explaining that the bankruptcy court had not "abstained from exercising jurisdiction," it had considered the merits. *Id.* at *10 (explaining that "[t]he decision to decline to exercise jurisdiction [] related to the underlying merits of [the IRS]'s arguments"). Next, the district court determined that the IRS could have raised both of its new

theories in the bankruptcy proceedings, but chose not to do so.   *Id*. at *11-12.

> [I]n attempting to disprove that there is an identity of claims, [the IRS] misses the mark.   [The IRS] does not argue that the *facts* are different in this case from the bankruptcy case—it does not claim, for example, that the funds in dispute before this court are different from those that were in issue before the bankruptcy court.
>
> Rather, [the IRS] is offering different legal bases to support its claims as to which party is entitled to take possession of the exact same funds.   These are questions of law regarding the same operative facts and series of transactions.   And they are the kinds of questions that the bankruptcy court already addressed at length and that this [c]ourt affirmed.

*Id*. at *13 (citation omitted; paragraph break inserted).

Thus, the district court found that the IRS could have raised its trust and lien theories in the bankruptcy proceeding, but did not, so res judicata barred the suit.   The IRS appeals.

### III.

When a district court dismisses a case under Federal Rule of Civil Procedure 12(b)(6), our review is de novo.   *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 576 (6th Cir. 2021).   Here, the district court dismissed the IRS's complaint because its claims were barred by res judicata.

Res judicata "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. --, 140 S. Ct. 1589, 1596 (2020); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (applying res judicata to orders from a prior bankruptcy proceeding).   Moreover, res judicata "bars relitigation on every issue actually litigated or which could have been raised with respect to that claim." *King v. S. Cent. Bell Tel. & Tel. Co.*, 790 F.2d 524, 528 (6th Cir. 1986) (quoting *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)); *James v. Gerber Prods. Co.*, 587 F.2d 324, 328 (6th Cir. 1978) ("[A] judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented." (citation omitted)).

Res judicata has four elements: "(1) a final decision on the merits by a court of competent jurisdiction; (2) . . . the same parties or their privies; (3) an issue [that] was litigated or which [c]ould have been litigated in the prior action; and (4) an identity of the causes of action." *Hogan v. Jacobson*, 823 F.3d 872, 884 (6th Cir. 2016) (quoting *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009)) (internal quotation marks omitted). Bankruptcy orders satisfy the first element. *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002).[1]

In this appeal, the IRS presses a single claim of error: that the district court "did not satisfy the third res judicata requirement," that the issue was or could have been litigated in a prior action. Apt. Br. at 38. In its brief, the IRS expressly waived any challenge to the district court's rulings on the other res judicata elements or any other aspect of its judgment. Apt. Br. at 38 n.4.

The IRS argues that it "could not have brought its trust and lien claims in the [post-dismissal] disgorgement or fees disputes—the proceedings to which the District Court applied res judicata—because the Bankruptcy Court did not have subject matter jurisdiction over those claims after its dismissal of the bankruptcy case." Apt. Br. at 39. The IRS presses this argument even though the bankruptcy court established that it had jurisdiction over the IRS's post-dismissal disgorgement motion and the Professionals' fee applications, and despite the IRS's contrary argument to the district court in this case. In the district court, the IRS argued that the bankruptcy court "abstained from exercising jurisdiction." *See Schafer & Weiner*, 2020 WL 7770907, at *8.

---

[1] We recognize that "the standard res judicata analysis can be an awkward fit when applied to bankruptcy proceedings." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017); *see also CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). "Unlike a typical lawsuit, where one party brings an action against another, a bankruptcy proceeding provides a forum for multiple parties—debtors, creditors, bidders, etc.—to sort out how to allocate, among other things, a debtor's assets." *Brown Media Corp.*, 854 F.3d at 158. Accordingly, the res judicata analysis "must be properly tailored to the unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case." *E. Mins. & Chems. Co. v. Mahan*, 225 F.3d 330, 337 (3d Cir. 2000); *see also* 18 Fed. Prac. & Proc. Juris. § 4408 (3d ed.). We are satisfied, however, that application of the standard res judicata analysis is appropriate here.

The district court held that the IRS had multiple opportunities to raise the trust and lien theories to the bankruptcy court, both before it dismissed the case and after. There is no contention that that IRS was taken unaware by the dismissal; it was the IRS that moved for dismissal. Prior to doing so—or perhaps rather than rushing to do so—the IRS could have brought either of these theories to the bankruptcy court's attention and preemptively moved the court to disgorge or enjoin distribution of the escrowed money. In fact, the trigger that prompted the IRS to move for dismissal was its discovery that CPS had not paid its post-petition taxes, which is the foundation of its trust theory. Certainly, the IRS was aware of the pre-petition tax debt, as that was its claim against CPS, and nothing prevented the IRS from moving the bankruptcy court— prior to dismissal—for relief from the automatic stay to the extent necessary to file a lien. *See*, *e.g.*, *Pansier v. United States*, No. 19-c-537, 2019 WL 7288952, at *1 (E.D. Wis. Dec. 30, 2019) (affirming a bankruptcy court's relief from the automatic stay to permit the IRS to enforce pre-petition tax liens); *In re Rice*, Nos. 97-14816, 98-1527, 1998 WL 939695 (Bankr. E.D. Va. Oct. 19, 1998) (granting the IRS's motion for relief from automatic stay to enforce tax lien).

Or, the IRS could have raised these theories to support its post-dismissal disgorgement motion and its opposition to the Professionals' fee applications. Whether correctly or not, the bankruptcy court asserted that it had jurisdiction to decide the disgorgement motion, even post-dismissal, and no party before the bankruptcy court argued that it did not (or cited law to support such an argument). Under such circumstances, the IRS should have—and certainly *could have*— pressed its trust and lien theories, both in support of its claims and to preserve them for direct appeal.

Even if it were later determined that the bankruptcy court lacked jurisdiction to decide the disgorgement motion, it had jurisdiction to decide the fee applications. *See In re 5900 Assoc.*, 468 F.3d 326, 330-31 (6th Cir. 2006). The IRS could have raised its trust and lien theories to challenge

the Professionals' fee applications, even if only to preserve those theories for direct appeal or a later independent action in a tribunal that had jurisdiction to order disgorgement of an improper distribution of the escrowed money. *See Browning*, 283 F.3d at 774 ("Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding.").[2]

Finally, recall that the IRS did not proceed directly from the bankruptcy court's decisions to filing this lawsuit. The IRS appealed those decisions to the district court, which affirmed the distribution of the escrowed money to the Professionals and held that the IRS could not take it from them. The IRS abandoned its appeals of those judgments, which are now final and binding, with res judicata effect that precludes the independent action here. If the IRS were to prevail in this new lawsuit, it "would nullify the initial judgment" and "impair rights in the initial action." *See Lucky Brand Dungarees*, 140 S. Ct. at 1597. The Professionals would have the escrowed money by virtue of the prior judgments while the IRS would have a conflicting judgment ordering the Professionals to disgorge those same funds. Res judicata exists to prevent such irreconcilable outcomes. *Id*. (explaining that res judicata applies "to prohibit a claim or defense that would attack a previously decided claim" (footnote omitted)).

## IV.

For the forgoing reasons, we AFFIRM the judgment of the district court.

---

[2] During the bankruptcy court's hearing on the fee applications, the IRS stated: "The [IRS] plans, in the next few weeks, to file a district court action seeking that the funds paid to [the Professionals] . . . be returned because, as has never been disputed in this case, the United States trust funds, . . . [i.e.,] the withheld income taxes and FICA taxes[,] were used to pay operating expenses, includ[ing to pay] . . . [the Professionals] who [held] between them, about $85,000." The IRS contends that this statement reserved its claims for res judicata purposes. We disagree.

The IRS made this statement as part of its response to the bankruptcy court's request for legal authority supporting the IRS's argument that the court should abstain from ruling on the Professionals' fee applications. And the bankruptcy court's response—in which it expressed its "appreciat[ion] . . . [for the IRS's] candor in telling [it] that the IRS intends to file something against these professionals, which is certainly within the right of the [IRS] if that's what the law provides"—offered no indication that the court believed that it was reserving the IRS's claims for a future action such that res judicata, if otherwise applicable, would not apply.